# CHARLESTON.

| 37 | 377 |
| 39 | 360 |
| 37 | 377 |
| 41 | 193 |
| 41 | 329 |
| 37 | 377 |
| 51 | 90 |
| 37 | 377 |
| 57 | 135 |
| 37 | 377 |
| 60 | 655 |

ROBINSON *et al. v.* WOODFORD.

Submitted September 17, 1892.—Decided December 17, 1892.

### 1. DETINUE—BOND—PRACTICE.

In this State, the action of replevin having been abolished, a replevy-bond and counter forthcoming bond have been made a part of the proceedings in the action of detinue, and the scope of this action as a remedy has been enlarged and advanced by chapter 102 of Code. See Ed. 1891, p. 723. (p. 379.)

### 2. DETINUE—PLEADING.

In detinue the plaintiff must aver and prove the kind, quantity or number and value of the property claimed by him, and that he is entitled to recover the same, and that defendant wrongfully detains it. (p. 385.)

### 3. DETINUE.

He must have at the time of bringing the action a general or special property in what he seeks to recover or some right of possession thereto. (p. 380.)

### 4. DETINUE—MARRIED WOMAN—SEPARATE ESTATE.

A married woman may bring an action of detinue to recover her separate personal property and join her husband as co-plaintiff. (p. 384.)

### 5. DETINUE—HUSBAND AND WIFE—SALE.

A direct sale and transfer for a fair and valuable consideration of personal property by husband to wife confers, as against strangers who are not creditors of the husband, a title thereto upon the wife, which may enable her to maintain an action of detinue in the name of herself and husband to recover the same, when unlawfully detained. (p. 383.)

### 6. DETINUE.

For the replevy bond, counter forthcoming bond, verdict, judgment, execution, and other procedure in the action of detinue, see chapter 102, Code.

### 7. DETINUE.

A case in which the action of detinue as a remedy for a married woman, where the suit concerns her separate property, discussed and applied.

### 8. ARGUMENT OF COUNSEL—DISCRETION OF COURT.

It is not improper for the trial-court to permit counsel in argument before the jury to comment on the fact that the other party

has not called and examined a material witness summoned on his behalf and present, and to ask such question as may be proper to lay the foundation for such comment. But such matters are largely within the discretion of the trial-court. (p. 391.)

J. H. WOODS for appellants.

I.—*Misjoinder of plaintiffs and variation between allegations and proofs.*—26 W. Va. 225; 10 W. Va. 171; 20 W. Va. 474; 29 W. Va. 385; 1 Min. Inst. 337; 1 Rob. (New) Pr. 216; Kell. Cont. Mar. Wom. ch. 6, § 6; 31 W. Va. 23; 2 Bish Mar. Wom. § 232.

II.—*Plaintiff in detinue must be entitled to exclusive possession of the chattel sued for.*—7 T. R. 9; 2 Tuck. Com. 80; 17 Gratt. 495.

III.—*Error to instruct on hypothesis.*—27 W. Va. 75; 14 W. Va. 100.

IV.—*Admissibility of evidence.*—1 Greenl. Ev. §§ 51, 52; 29 W. Va. 410; 34 W. Va. 240; 33 W. Va. 40; 1 Greenl. Ev. § 147 *et seq.*; 20 W. Va. 679, 693; 27 W. Va. 16; 22 W. Va. 761, 800; 33 W. Va. 433; 15 S. E. Rep. 412; 1 Greenl. Ev. § 108; 36 N. Y. 513; 102 U. S. Rep. 333, 334.

V.—*Evidence insufficient to warrant verdict.*—25 W. Va. 692.

VI.—*Right of married woman to sue in detinue.*—1 Wash. 308, 312; Haw. Part. § 81 note 27; 20 Ala. 117; 17 Gratt. 496.

VII.— *Wife can not take from her husband.*—Code, c. 66; 10 W. Va. 171; 27 W. Va. 759.

VIII.—*Special Property in plaintiff not sufficient as against true owner.*—1 Chitt. 118; 2 Sand. 47, b. c. d.

IX.—*Plaintiff must have had the right to possession, when suit was brought.*—7 T. R. 9; 2 Tuck. Com. 80.

X.—*Detinue will not lie by a tenant against his co-tenant.*— Hew Part. § 81, notes 18, 27; 17 Gratt. 496.

XI.— *The allegata and probata must agree.*—3 W. Va. 556; 11 W. Va. 217; 26 W. Va. 225.

XII.—*Pleas in bar and abatement.*—4 Min. Inst. 641, 643; 10 W. Va. 171; 27 W. Va. 759.

C. F. TETER and DAYTON & DAYTON for appellees.

I.—*In detinue the unlawful detention of property is the gist of the action.*—2 Tuck. Com. 80; 1 Chit. 118.

II.—*Immediate right of possession.*—4 Am. Rep. 632.

III.— *Voluntary gift to wife or child.*—Sto. Eq. Juris. § 356 ;
26 Gratt. 334 ; 8 Wheat. 229 ; 10 Gratt. 259 ; 7 Johns.
Ch'y 57 ; 33 Conn. 197 ; 14 Mich. 96 ; 4 Barb. 552 ; 31
Am. Rep. 657 ; 44 N. Y. 302 ; 37 Mich. 324 ; 89 Ill. 436 ;
9 Am. Rep. 687 ; 2 Johns. Ch'y 539 ; 10 Ves. 146 (Co-
Op. Ed. of N. Y. Ch'y Rep.) ; 1 W. Va. 205 ; 27 W.
Va. 206 ; 25 W. Va. 242 ; 32 W. Va. 447 ; 29 W. Va.
441 ; 27 W. Va. 306 ; 47 N. H. 297 ; 31 W. Va. 374.

IV.—*Admissibility of evidence.*—29 W. Va. 410 ; Id. 98 ; 20
W. Va. 223.

V.— *Withholding Evidence.*—27 W. Va. 16 ; 28 W. Va. 773,
p't 4 Syll. ; 1 Gratt. 355 ; 10 H. L. Cas. 589 ; 24 Pa. St.
120.

HOLT, JUDGE :

This is an action of detinue for the recovery of fifty eight
ewes and forty three lambs, brought on the 6th day of July,
1889, in the Circuit Court of Barbour county, by plaintiffs
against defendant, Ira C. Woodford, which resulted in a
judgment for plaintiffs, to which defendant obtained this
writ of error.

So far from the action of detinue having gone out of use
in this State, it has been in long and constant use, and by
liberal construction has been advanced and promoted as a
remedy for the recovery of the possession of all tangible
personal property capable of being described and identified
with such reasonable degree of certainty that it may be
known, and the possession delivered.   The scope of the ac-
tion of replevin, for the recovery of the thing itself, being,
in the opinion of some, confined to a taking by wrongful
distress, (see 3 Bl. Comm. 208 ; Hammond's Ed. and Dr.
Hammond No. 31, p. 230) the legislature of Virginia, by
Act 1822–23, p. 31, c. 29, § 3, after reciting such doubt, de-
clared that the action should be construed to exist in no
other cases than those which should arise under and by
virtue of the act in Rev. Code 1819, p. 446, c. 113, concern-
ing rents. See notes of revisors of Code of 1849, p. 735.
By Code of 1849 it was abolished.   See Code 1849, (Ed.
1860) s. 4, c. 148, p. 635.   Section 4, c. 103, Code W. Va.

(Ed. 1891) p. 725, reads as follows : " No action of replevin shall be hereafter brought."

The usefulness and remedial scope of the action of detinue has been still further extended by giving the plaintiff the immediate possession by means of a statutory replevy bond, and the defendant may within three days have the property returned to him, on giving a proper forthcoming bond. See chapter 102, Code (Ed. 1891). The plaintiff must have the right of possession, as by property general or special, and be entitled to recover the same, and he need not treat his property or ownership as divested by the trespass in taking it, but may do so, at his option. See 3 Com. Dig. 364; 4 Min. Inst. p't 1, p. 483. The practice in relation to the action of detinue, as to verdict, judgment and execution, is regulated by section 6, c. 102, Code.

There is a demurrer to the declaration, which does not seem to have been directly or formally disposed of. The declaration contains two counts : No. 1, based on the fiction of bailment, (*ex contractu*) ; the other on the fiction of loss and finding, *etc.* (*ex delicto*). But there is no misjoinder on account of these fictions ; for the gist of the action is plaintiff's right of possession and defendant's wrongful detention of it. Both counts are good, separately and collectively, and the demurrer should have been, and impliedly has been, overruled. The defendant pleaded the general issue *non detinet*, and issue was joined, with agreement that anything might be given in evidence under the plea of *non detinet* which might be given in evidence if properly and specially pleaded. There was one trial, and the jury, failing to agree, were from rendering their verdict discharged. At the second trial there was a verdict for plaintiffs, motion for new trial by defendant overruled, and judgment rendered. The defendant excepted to this action of the court, and to various rulings made during the progress of the trial, which are set forth in eleven several bills of exception.

In bill of exceptions No. 1 there is set out, not the facts, but all the evidence, according to act of March 12, 1891. See section 9, c. 131, Code (1891). The material facts to be gathered from the pleading and evidence are as follows :

In June, 1888, the plaintiff Lloyd D. Robinson was in possession of the sheep in controversy, except the natural increase thereafter. He either owned them himself, or jointly as partner of his brother John Robinson, who was a single man, then living in the family of his brother the plaintiff. There were origionally four brothers in the firm of L. D. Robinson & Bros., but these two bought out the interests of the others. So that the partnership property came to be owned in the proportion of five eighths by John A. and three eighths by Lloyd D. Robinson. This joint property included a farm on the Valley river, a short distance below the town of Phillippi, where plaintiffs kept the sheep. The firm was largely indebted, and the creditors were pressing for payment, and among them the Kingwood Bank. Lloyd the plaintiff, and his brother John, were both on the notes due the Bank of Kingwood. In order to meet a four hundred dollar note due the bank, plaintiff desired to sell the sheep; offered them to Mr. John F. Woodford for two hundred and twenty five dollars but he declined to buy. His wife and coplaintiff, Prudence Grant Robinson, had when married some sole and separate property, including interests in land, value and quantity not stated, and about five hundred and fifty dollars in money.

In June, 1888, after John F. Woodford declined to buy, plaintiff Lloyd D. Robinson sold the sheep to his wife, Prudence, for two hundred and twenty five dollars either as sole owner, as plaintiff claims, or as joint owner with his brother John, with the knowledge of John, who was then living with his brother, and had been for a year; and the money received from the wife for the sheep was paid on the note due from plaintiff and his brother John to the Kingwood Bank. John A. Robinson knew where the money came from on the sale of the sheep, and that it had been applied to the debt due the bank from him and others. The firm of L. D. Robinson & Bros. existed up to August 5, 1887.

Some time thereafter, L. D., the plaintiff, and his brother John bought out their brother James Perry Robinson, and John afterwards bought out their brother W. F. Robinson. The wife was not to get the lambs of that year; for by

written contract dated March 1, 1888, the plaintiff Lloyd D. Robinson had sold them to L. E. Reynolds. This contract is signed by L. D. Robinson and Granville J. Parks, as agent for C. L. Reynolds, and by W. F. Robinson as witness. Plaintiff Lloyd D. Robinson also sold the wool, and the sheep were charged in his name alone on the property books down to the year 1889, when they were listed and assessed in the name of his wife, who had them in possession and paid the taxes on them. She also loaned the firm three hundred dollars in money, which was applied to their debts, and for which she seems to have a confessed judgment.

About the 16th day of March, 1889, Mrs. Robinson sold the lambs to Mr. Lon Corder. Some time after that John Robinson, claiming an interest, notified Corder not to pay plaintiff, which resulted in a suit, in which the plaintiff Mrs. Robinson succeeded. Previous to this the brothers had disagreed about the hotel which they owned and had been running as partners. On the 5th day of July, 1889, the brother John A. Robinson, who claimed five eighths interest in the sheep, taking with him the defendant, Ira C. Woodford, went very early in the morning to the farm, where, without the knowledge of plaintiffs, he sold and delivered the sheep in controversy to defendant, Woodford, who immediately drove the same away, between six and seven o'clock in the morning, to his home, having paid John Robinson two hundred and thirty one dollars for them ; and this action of detinue was brought the next day.

Bill of exceptions No. 2 contains the following three instructions which defendant asked the court to give the jury, but the court refused, and defendant excepted.

"(1) If the jury believe from the evidence that the plaintiffs were husband and wife at the date of the institution of this suit, and that the sheep in the plaintiffs' declaration mentioned were then the property of the husband, they must find for the defendant.

"(2) If the jury believe from the evidence that the sheep mentioned in the plaintiffs' declaration were, before the alleged detention thereof, the property of L. D. Robinson,

and that he afterwards sold the same to his coplaintiff, Prudence G. Robinson, when she was his wife, and that the relation of husband and wife has since uninterruptedly existed, and that the said Prudence G. Robinson, at the date of the institution of this suit, had no other title or interest in said property, the court instructs the jury that the said sale at law was void and conferred no such title upon the wife as authorized her, in the name of herself and husband, to maintain this suit, and the jury should find for the defendant.

"(3) The court instructs the jury that, before the plaintiffs can maintain this suit, it must be proved to the satisfaction of the jury that the plaintiffs, or the female plaintiff, through title not derived from her husband during marriage, were entitled to the exclusive possession of the sheep in the plaintiffs' declaration mentioned."

Although contracts made directly between husband and wife are void at common-law, because the common-law regards them as one person, yet in equity they may contract with and convey to each other, though not so freely as third persons, and such gifts, sales and conveyances are good between husband and wife and against all persons claiming under them. But if any married woman, directly or indirectly, acquire any property, real or personal, from her husband the same shall be subject to all the debts and liabilities of her husband existing at the time she acquired the same, and be voidable as to such existing creditors, and as to purchasers without notice, and as to subsequent creditors, if made with intent to delay, hinder, or defraud them. See opinion of SNYDER, J., in *McKenzie* v. *Railroad Co.*, 27 W. Va. 306–311; Kelly, Cont. Mar. Wom. § 9, c. 6, p. 137; *Fox* v. *Jones* (1866) 1 W. Va. 205.

Chapter 66 of Code 1868, which took effect April 1, 1869, did not affect such contracts. It did not take away any former right or create any new disability. Nothwithstanding section 3 of chapter 66, she could still take from her husband by devise or bequest, of course, and from him by purchase for a valuable consideration, and by reasonable gift, subject to the rights of creditors. See *Humphrey* v. *Spencer* (14 S. E. Rep. 410). The legal title in such cases

remains in the husband as trustee for the wife. Such direct conveyance, however, confers upon the wife the whole beneficial interest and estate, leaving in the husband nothing but the mere legal title, without any beneficial interest or estate. SNYDER, J., in *McKenzie* v. *Railroad Co.*, 27 W. Va. 306–311. See, also, *Jones* v. *Obenchain*, 10 Gratt. 259; *Core* v. *Cunningham*, 27 W. Va. 206; *Bank* v. *Wilson*, 25 W. Va. 242; *Burt* v. *Timmons*, 29 W. Va. 441 (2 S. E. Rep. 780); *Zinn* v. *Law*, 32 W. Va. 447 (9 S. E. Rep. 871); 1 Bish. Mar. Wom §§ 730, 731; Har. Cont. Mar. Wom. § 582.

"One sued in respect of the property transferred to the wife or an intruder, and third persons generally, utter strangers to the transaction, ought not, as a rule, to dispute collaterally the wife's title as grantee or transferee from her husband under the conveyance or assignment." Schouler, Husb. & Wife, § 387, and cases cited. See *Sayers* v. *Wall*, 26 Gratt. 354; *Hogan* v. *Hogan*, 89 Ill. 436; *Lady Arundell* v. *Phipps*, 10 Ves. 146; Mr. Desty's note in Co-op. Ed. N. Y. Ch'y Rep.; *Hunt* v. *Johnson*, 44 N. Y. 27.

Section 15, c. 66, Code, says a married woman may sue and be sued without joining her husband, in the following cases: (1) "Where the action or suit concerns her separate property." But this still permits the wife to join the husband for conformity. At common-law he must have joined as coplaintiff. See *Wyatt* v. *Simpson*, 8 W. Va. 394. She is not, in the given case, permitted to sue alone. But in this case the husband is a trustee of the naked legal·title by operation of law—it remaining in him; the wife having the whole beneficial interest. In such case the suit may be properly brought by husband and wife jointly.

The true view, under this evidence, is that the sheep became her separate property. This action concerns such property, and the wife could have sued alone, under the statute, whether her title was legal or equitable; but she could also, if she saw fit, have joined her husband for conformity and under our statute maintained an action of detinue for the recovery of the possession of her separate personal property against any one wrongfully withholding the possession of the same. See *Ketchum* v. *Brennan*, 53 Miss.

609; *Woolsey* v. *Brown,* 74 N. Y. 82; *Kibble* v. *Butler,* 27 Miss. 586; *Kays* v. *Phelan,* 19 Cal. 128; *Herzberg* v. *Sachse,* 60 Md. 426; *Burns* v. *Lynde,* 6 Allen, 305. And if the naked legal title, by operation of law, remains in the husband, as husband, he may for that reason be joined; for his right to sue under the statute does not depend on his having the legal title, but on his having the substantial, beneficial interest. The application of any other rule, that would defeat her action upon a technical question of pleading, would, in my opinion, be "sticking in the bark."

Instruction No. 1 of defendant was properly refused, because there was no evidence tending to show that at the date of the suit the sheep belonged to the husband alone, otherwise than by the common-law invalidity of his direct sale and transfer thereof to his wife.

Instructions Nos. 2 and 3 we have already considered, and have endeavored to show that the sale by the husband directly to the wife, although void at law, and perhaps still leaving the naked title in the husband as trustee, by legal implication, for the wife, nevertheless conferred upon the wife the equitable ownership—the whole beneficial interest; and by the statute she may sue alone, where the action or suit concerns her separate property, whether her ownership be legal or equitable, and that she may, if she sees fit, still join her husband, as at common-law. If this view is correct, defendant's instructions No. 2 and No. 3 were properly refused.

In the action of detinue the plaintiff must, by averment show the kind, quantity, and value of the property claimed, prove that defendant unlawfully detained it, and that he is entitled to recover the same. See *Burns* v. *Morrison* (15 S. E. Rep. 62). There is no averment that defendant, Woodford, had any joint interest.

At the instance of plaintiffs the court gave the instruction set out in defendant's bill of exceptions No. 3. This instruction is as follows:

"If the jury believe from the evidence that the sheep in controversy belonged to the plaintiff L. D. Robinson and W. F. Robinson, J. P. Robinson, and John A. Robinson, in partnership, and that while they so belonged to the said

partnership of L. D. Robinson & Bros., or J. P. Robinson & Bros., the said L. D. Robinson, as a member of the firm, was vested with authority, and sold the same to the plaintiff Prudence G. Robinson, for a valuable consideration, and used the money derived from said sale in the payment of said partnership debts, then they must find for the plaintiffs."

This instruction is based on the supposition that a sale was made by the husband to the wife, with the knowledge and implied consent of the members of the firm, for the purpose of raising money to pay on a firm debt, and the money thus obtained from the wife was, with the knowledge of defendant's vendor, thus obtained and thus applied. There was evidence tending to prove this, and the instruction was intended to meet this case. Grant defendant's contention, that the sheep were partnership property, yet if plaintiff L. D. Robinson, as a member of the firm, was vested with authority, by the firm or those interested, to sell to plaintiff Prudence G. Robinson, in order to raise money to pay a partnership debt, then they must find for the plaintiffs.

This instruction, although it may contain some matters of supposed fact not strictly accurate, and some matter of law not essential to the validity of such a sale, is still, in my opinion, substantially correct, and is not in either respect wrong, to the injury or prejudice of the defendant; for there was evidence tending to show that the defendant's vendor John A. Robinson was, according to defendant's claim, owner of five eighths, and plaintiff Lloyd D. owner of three eighths, of the flock of sheep, and that such sale to the wife, for such purpose, was made with his knowledge and consent, and resulted in paying that much of a partnership debt for which he was liable.

Defendant's exceptions No. 4 and No. 5 are as follows:

"No. 4: Be it remembered that upon the trial of this cause the plaintiffs, to maintain the issue upon their part, offered the testimony of themselves to prove that the sheep in the plaintiff's declaration mentioned were, at the time of the alleged detention thereof by the defendant, the sole and separate property of the female plaintiff, Prudence G. Rob-

inson, and that the same had been purchased by her of her coplaintiff, Lloyd D. Robinson, on the — day of June, 1888, when the plaintiffs were husband and wife, and were living together as such, to the introduction of which testimony the defendant objected. But the court overruled his objection and permitted the said testimony to go to the jury, as set out in defendant's bill of exceptions No. 1, embodying all the evidence in this cause, to which ruling of the court the defendant excepted, and tendered this, his bill of exceptions, which he prays may be signed, scaled, and made part of the record in this cause, and the same is accordingly done.

"No. 5 : Be it further remembered that the plaintiffs, to further maintain the issue on their part, offered in evidence to the jury the testimony of the plaintiff Lloyd D. Robinson for the purpose of proving what he did with the money received by him from the sale of the sheep in the plaintiffs' declaration mentioned to his coplaintiff and wife, Prudence G. Robinson, and what debt he paid with the same, as set out in defendant's bill of exceptions No. 1, embodying all the evidence in this cause, to the introduction of which testimony the defendant objected. But the court overruled his objection, and permittted the said testimony to go to the jury, to which ruling of the court the defendant excepted, and tendered this, his bill of exceptions, which he prays may be signed, scaled, and made part of the record, and the same is accordingly done."

The competency and effect of the evidence here excepted has already been discussed, and need not be repeated, and defendant's objection to the introduction thereof was properly overruled.

Defendant's bills of exceptions No. 6, No. 7, and No. 9 are as follows :

"No. 6 : Be it further remembered that upon the trial of this cause the plaintiffs, to maintain the issue upon their part, offered in evidence a deed from Jacob W. Robinson to L. D. Robinson and others, dated the 16th day of February, 1886, which deed is set out in defendant's bill of exceptions No. 1 embodying all the evidence in this cause, for the purpose of proving the insolvency of said Jacob W. Robinson, to the introduction of which deed, for the pur-

pose aforesaid, the defendant objected. But the court overruled his objection, and permitted the said deed to be read to the jury, to which ruling of the court the defendant excepted, and tendered this, his bill of exceptions, which he prays may be signed, sealed, and made part of the record, and the same is accordingly done."

"No. 7: Be it further remembered that upon the trial of this cause the plaintiffs, to maintain the issue on their part, offered in evidence to the jury a paper dated the 1st day of March, 1888, signed by Granville Parks, with his mark, as agent for C. L. Reynolds, and attested by W. F. Robinson, as set out in defendant's said bill of exceptions No. 1, embodying all the evidence in this cause, for the purpose of showing knowledge on the part of W. F. Robinson, and his acquiescence at that time in a claim in the sole ownership on the part of L. D. Robinson to the lambs therein, as the increase for the year 1888 of the sheep in the plaintiffs' declaration mentioned, to the introduction of which paper the defendant objected. But the court overruled his objection, and permitted the same to be read to the jury for the purpose aforesaid, to which ruling of the court the defendant excepted, and tendered this, his bill of exceptions, which he prays to have signed, sealed, and made part of the record, and the same is accordingly done"

"No. 9: Be it further remembered that upon the trial of this cause the plaintiffs, to maintain the issue upon their part, during the cross-examination of defendant's witness John A. Robinson, and in connection with his testimony, offered in evidence to the jury a paper dated the 16th day of March, 1889, signed by Alonzo Corder, as set out in defendant's bill of exceptions No. 1, embodying all the evidence in this cause, to the introduction of which paper the defendant objected. But the court overruled his objection, and permitted the said paper to be read to the jury, to which action of the court the defendant excepted, and tenders this, his bill of exceptions, which he prays to have signed, sealed, and made part of the record, and the same is accordingly done."

The deed of Jacob W. Robinson, mentioned in exception No. 6, was, in connection with other testimony, admissable,

as tending to show that Jacob W. Robinson did not after such deed buy the sheep in controversy and give them to his four sons, as it tended to show that he had nothing to buy with, and it tended to support plaintiff Lloyd D. Robinson's pretension and testimony that he himself had bought and paid for the sheep.

The written contract for the sale of lambs, signed by Granville Parks as agent of C. L. Reynolds, and by plaintiff Lloyd D. Robinson, dated 1st March, 1888, for the sale of that year's lambs by the plaintiff Lloyd D., mentioned in No. 7, was witnessed by the brother W. F. Robinson, and tended to show that they were the property of plaintiff, or that he was authorized to sell, and was selling them, with the knowledge and implied consent of one of the partners of the firm of L. D. Robinson & Bros.

The contract mentioned in defendant's bill of exceptions No. 9 was in writing, signed and sealed by Prudence G. Robinson, the plaintiff, and W. A. Corder, dated 16th March, 1889, and was for the sale of the lambs by her to Corder. There was evidence tending to show that this contract was made with the knowledge of defendant's vendor, John A. Robinson, and without objection on his part at that time.

Defendant's bill of exceptions No. 11 is as follows :

"No. 11 : Be it remembered that upon the trial of this cause, during the examination of James P. Robinson, a witness on behalf of the defendant, and one of the four sons of Jacob W. Robinson, in whom title to the sheep in the plaintiffs' declaration mentioned was vested by a sale or gift thereof from Jacob W. Robinson to them at the time he purchased the same of A. T. Daniels and J. E. Heatherly, as the defendant claims, the defendant, as tending to prove that the title to said sheep was so derived, and was not derived by the plaintiff, L. D. Robinson, by a purchase by him from said Daniels and Heatherly, as plaintiffs claim, proposed to inquire of the witness (as set out in defendant's bill of exceptions No. 1, embodying all the evidence in this cause) if he had any conversation with said Jacob W. Robinson at the time the sheep were purchased from Daniels and Heatherly, or just before that time, as to his intention in respect thereto ; and also what he said to witness after-

wards about such intention, to which inquiry the plaintiffs objected, and the court sustained the objection, to which action of the court the defendant excepted, and tendered this, his bill of exceptions, which he prays to have signed, sealed, and made part of the record, and the same is accordingly done."

This evidence was properly excluded, because it assumed one of the facts in controversy, viz. that Jacob W. Robinson, the father, had bought the sheep from Daniels and Heatherly. Unless they were in fact bought by him, no declaration of his could be part of the transaction; and plaintiff claims and introduces evidence tending to prove that there was no such transaction, but that he had bought them himself. That was one of the points in dispute. Moreover, Jacob W. Robinson was present at the trial, summoned as a witness on behalf of defendant.

Defendant's bills of exceptions No. 8 and No. 10 are as follows :

"No. 8: Be it remembered that upon the trial of this cause, and after the plaintiffs had introduced their evidence in chief and had rested their case, and after the defendant had introduced his evidence in defence, and testified himself in his own behalf, and been cross-examined by counsel for plaintiffs, the defendant's counsel stated to the court and to the counsel for the plaintiffs, in the presence and hearing of the jury, that the defendant rested his defence ; and thereupon one of the counsel for the plaintiffs, who during the trial had conducted their cause, and before introducing any evidence in rebuttal of the defendant's evidence, rose to his feet, and said to the counsel for the defendant, in the presence and hearing of the court and the jury, 'We protest against your refusing to examine Jacob W. Robinson,' to which remark of the plaintiffs' counsel, so made as aforesaid, the defendant, by his counsel, then and there objected, in the hearing of the court, and the court failed to pass upon the said objection, to which remark of counsel for the plaintiffs, and the action of the court, the defendant excepted, and tendered his bill of exceptions, which he prays to have signed, sealed, and made part of the record, and the same is accordingly done."

"No. 10 : Be it remembered that upon the trial of this cause, while the defendant was upon the witness stand, testifying in his own behalf, the counsel for the plaintiffs, upon the cross-examination of the defendant asked him, as set out fully in defendant's bill of exceptions No. 1, embodying all the evidence in this cause, the following questions: 'This case was tried once before, wasn't it, in court here? Answer. · Yes, sir. On that trial, did you have Jacob W. Robinson summoned as a witness? A. Yes, sir. Was he examined before the jury on that trial? A. Yes, sir. Was he summoned as one of your witnesses at this term? A. I do not know whether he was or not. Q. Haven't you got him summoned as a witness in this case? What do you say? Is he summoned here as a witness for you at this term? A. I guess he is summoned. I did not see the summons.' To which questions and answers the defendant objected, but the court overruled his objection and permitted the questions and answers to go to the jury, to which ruling of the court the defendant excepted, and tendered this, his bill of exceptions, which he prays to have signed, sealed, and made part of the record, and the same is accordingly done."

The case had been once before tried. Defendant on that trial, and on this one, sought to make out his defence by showing that he derived title by purchase from John Robinson. He attempted to prove by witness Heatherly and witness Daniels that the sheep in controversy were bought from them by Jacob W. Robinson, and that he had bought and paid for them, and had then given them to his four sons, who composed the firm of L. D. Robinson & Bros. The three brothers other than the plaintiff attempt to give in evidence what their father said as to who bought the sheep. There evidently was confusion and doubt on this point. Jacob W. Robinson, the man himself who must have known whether he bought them for himself, and paid for them, was present as a witness, summoned to testify on behalf of defendant, the defendant has a right to examine or not his witness Jacob W. Robinson. But, if he failed and refused to examine him, plaintiffs would have the right, in their argument before the jury, to comment on

such refusal for what it was worth under the circumstances; otherwise, plaintiffs would be exposed to the risk of examining their adversary's witness as their own, and of being unable to impeach his credibility. No instruction was asked upon the subject, and none given. A foundation was laid for comment on the refusal to examine his own witness on a matter peculiarly within such witness' power to furnish testimony, and the failure to· produce it could not escape the notice of the jury; and the object was to show by whose fault it was kept from them, and not to use any presumption that might arise therefrom as substantive proof. See *Bindley* v. *Martin*, 28 W. Va. 773, 790; 2 Whart. Ev. § 1266.

Defendant attempted to introduce inferior evidence where· the best evidence was at hand, in the testimony of a witness summoned by him. Had he a right to ask the court to say that his refusal to examine him should not be made the subject of comment to the jury? It has been held that one side may put in evidence the fact that a material witness for the other side is living, and within the jurisdiction of the court, and yet has not been called as a witness in the case. And, similarly, it has been held that if one side takes a deposition, and does not put it in evidence, the other side may comment on the fact to the jury. *Learned* v. *Hall*, 133 Mass. 417. The question naturally arises, when one, who must have known of the circumstances of the case, is not called as a witness, whose side his evidence would favor, if he should be called.

Apparently, in the case of this anomalous kind of evidence, it is competent for either side to put in evidence the fact that the other side has not called the witness, and in argument to allege that the reason for this is that he dared not do so. See *Com.* v. *Haskell*, 140 Mass. 128 (2 N. E. Rep. 773); 1 Greenl. Ev. § 51*a*, note (Ed. 15).

I do not see why the court should, in this instance, have prevented the plaintiffs from laying the proper foundation for commenting in argument before the jury upon defendant's failure or refusal to examine his witness Jacob W. Robinson upon a material fact peculiarly within the witness' knowledge, and which defendant attempted to get before

the jury by other and unsatisfactory testimony. There is nothing to show that the learned judge permitted it to be used for any other or improper purpose, and his ruling on the point was right.

Defendant's bill of exceptions No. 1 is prepared according to the act of March 12, 1891, amending section 9 of chapter 131 of the Code, taking effect ninety days after its passage. See Acts of 1891, p. 304, and section 9, c. 131, Code, as amended (Ed. 1891) p. 834. This section as it now reads, requires the court to certify all the evidence touching such question, and the whole of the evidence so certified shall be considered by the Court of Appeals, both upon the application for and hearing of the writ of error or *supersedeas.* How far, if at all, it may trench on the judicial power, or what may be its true construction and effect, it is not necessary to decide, and is not intended to be decided, in this case. It may be intended simply to say that none of the proper evidence shall be wholly disregarded, under any artificial or technical rule, but all shall be considered according to its natural and fair effect, taking into consideration its attitude after it reaches the Appellate Court; and if, being so considered, and there being a clear and decided preponderance of evidence against the finding of the jury, then a new trial should be granted. If that is all that it means on that particular but important branch of the subject, then its change of the present rule, if any, is very slight.

In this case I do not consider that there is any clear and decided preponderance of evidence against the verdict of the jury, neither do I consider that the verdict is without evidence on any essential point, or that the evidence is in any respect plainly insufficient to warrant the finding of the jury, or that the verdict is against the law of the case, such as the evidence tends to make it.

The evidence on behalf of plaintiffs tends to prove that she had title to the property, with present right of possession, and that defendant had actual possession before and at the time of the bringing of the suit. *Burns* v. *Morrison* (15 S. E. Rep. 62).

The declaration states the kind, number, and value of

the flock, with reasonable certainty of description, and that plaintiffs were lawfully possessed of them ; that they came into the possession of defendant, as stated in the first count by contract of bailment, in the second by finding, and the general and usual averment, which is sufficient, that defendant, though requested to do so, has neglected and refused, and still neglects and refuses, to deliver them, or any of them, to plaintiffs, but has detained and still detains them from plaintiffs, to their damage four hundred dollars, *etc.*

The evidence tends to show that the sheep described in the declaration were the separate property of the wife, and in her possession; and under her power and control, at least as against a stranger, who has no interest as a creditor of the husband, and were sold and transferred to her by her husband for an adequate consideration in money paid out of her separate estate ; that she is, therefore, as against the defendant, the equitable owner, with the entire beneficial interest, with the naked legal title remaining for her benefit in her husband.

Section 15, c. 66, Code, gives her the option to bring her action or suit without joining her husband, if she sees fit, where the action or suit concerns her separate estate, whether her title thereto be legal or equitable ; thus in express terms giving her the benefit of this common-law action, now made so efficient by our statute. At the same time, it impliedly leaves her the option of following the common-law method of joining her husband—a mode for many reasons still convenient, and especially so in this case, for the reason that he remains, by implication of law, a kind of trustee, as husband, still clothed with the naked legal title for her benefit ; and, as they held the property, so they have recovered it.

The same evidence tends to show the right to the exclusive possession in their respective and consistent characters, that the defendant wrongfully and forcibly took the property out of their possession, still detains it, and that they are entitled to recover the same, if to be had, and, if not, then the value thereof, as found by the verdict of a jury, with proper damages for the detention.

This brings us to the last point made by counsel for defendant, namely, that the judgment rendered by the court on the verdict found by the jury is improper. The record shows defendant to be in the possession of the property; for he gave the counter bond on 6th July, 1889, which permitted him to have the property returned or retained so that the same be forthcoming to answer any judgment or order of court respecting the said property, *etc.* The verdict finds for the plaintiffs the one hundred and one head of sheep, of the value of three hundred and eighty five dollars and fifty three dollars and ninety cents damages for the detention thereof.

In such case the statute requires that the judgment shall be that the plaintiffs recover the possession of said property if a recovery thereof can be had, and, if not, that they recover the value thereof as found by the verdict, and the damages assessed by the jury for the detention of such property, and the costs in such action. See section 6, c. 102, Code. This is the form long used by our courts, and is correct. See Rob. Forms, p. 142 (Ed. 1841). See same, pages 560, 563, where will be found the form of declaration used in this case, taken from 2 Chitty, Pl. (5th Am. Ed. from 4th London Ed.) p. 592.

Therefore it appears to us, upon this whole record, that the judgment complained of is substantially right and must be affirmed.

NOTE BY BRANNON, JUDGE:

I think that section 12, c. 66, of the Code, is simply an enabling act, enabling a married woman, in the instance by it specified, to sue alone. It does not bear upon the character of title she must have to maintain detinue, ejectment, or other action. She must have just such title as the law in the particular action requires. The statute does not help her, as to that point.

LUCAS, PRESIDENT, concurs in this note.

AFFIRMED.