WILLIAM PODRAT *vs.* NARRAGANSETT PIER RAILROAD CO.

MARCH 13, 1911.

PRESENT:  Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Evidence.*

Where defendant had brought out the fact that an important witness for plaintiff, who had been present at former trials of the case, was absent from the trial, with the object of laying the foundation for an argument to the jury that plaintiff did not dare to call the witness, and plaintiff being permitted, after objection, to show the reason, testified that the last time witness was called, all he would say was that he did not remember, and he did not summon him for that reason and no attempt was made to discover whether the loss of memory was real or feigned, the admission of plaintiff's explanation was not prejudicial.

(2)  *Evidence.  Books.  Memoranda.*

In an action against a carrier for loss of goods in transit, where it appeared that a list of the goods was made by a clerk on a slip, and the list was posted by the bookkeeper in a book, and the slip was afterwards lost, the bookkeeper was properly permitted to testify as to the items making up the bill sent to defendant and that the items were taken from the entries made in such book.

(3)  *Reading Testimony to Jury.*

Counsel in their argument to the jury, may be permitted, in the discretion of the trial judge, to read to the jury from testimony in the case.

(4)  *Carriers.  Loss of Goods.  Delivery to Connecting Carrier.*

In an action against a carrier for loss of goods in transit, defendant requested the court to charge "Plaintiff must prove delivery to the N. R. R. Co. (defendant) at K. of the goods alleged to have been lost.  Proof of delivery to the W. R. R. Co. (original carrier) at H., is not sufficient."  The court modified it as follows:  "But proof of acceptance of the shipment unobjected to by the N. Y., N. H. & H. R. R. Co. (connecting carrier) at W. and the defendant company at K. is sufficient evidence of delivery so that there

would be a presumption that the shipment remained as it was when it left H.:"—

*Held,* that, as agent of defendant was apprised of the contents of the car at K., and had the opportunity to inspect it, the charge was unobjectionable.

(5)  *Carriers.  Loss of Goods.  Burden of Proof.*

*Held,* further, that under the circumstances a request to charge that the burden of proof was upon defendant to show that the loss did not occur while the goods were in its possession was properly granted.

(6)  *Uncontradicted Evidence.  Damages.  Value.*

Where there was no testimony to contradict it, the jury were rightly instructed to accept the plaintiff's testimony upon the question of value.

(7)  *Carriers.  Liability for Loss of Goods.  Bills of Lading.*

Conditions in a bill of lading were as follows:—

"No carrier shall be liable for loss——after property is ready for delivery to consignee."

Property not removed by the person entitled to receive it within 24 hours after its arrival at destination, may be kept in the car, depot or place of delivery of the carrier at the sole risk of the owner,——."

Defendant claimed that after car arrived at destination, it was checked up within a few minutes, and that as soon as this record was made, goods were ready for delivery to consignee and liability of carrier terminated:—

*Held,* that, until due notice had been given consignee that goods were ready for delivery, or until a reasonable time had elapsed within which consignee might receive the goods, the liability of carrier was not terminated.

TRESPASS ON THE CASE for negligence.  Heard on exceptions of defendant and overruled.

DUBOIS, C. J.  This is an action of trespass on the case for negligence.  The declaration sets forth that the plaintiff shipped certain cases of goods from Hope Valley to Narragansett Pier; that the goods in question were carried by the Wood River Branch Railroad to Wood River Junction, its terminus, and there delivered to the New York, New Haven and Hartford Railroad Company, and carried by it to Kingston Junction, where they were delivered to the Narragansett Pier Railroad Company to be carried to Narragansett Pier, and that while in the possession of the defendant company, one case containing goods of the value of five hundred dollars, was lost by the negligence of its servants and agents.

The defendant pleaded the general issue.  Upon trial before

a jury in the Superior Court, verdict was rendered for the plaintiff for $500. The defendant filed its petition for a new trial on the grounds that the verdict is against the evidence and the weight thereof; that the verdict is against the law and that the damages awarded are grossly excessive. This motion was denied by the Superior Court and the defendant took an exception thereto and gave notice of its intention to prosecute a bill of exceptions upon all the exceptions taken by it in the course of the trial. Thereafterwards the defendant filed its bill of exceptions, which was duly allowed, containing eighteen exceptions whereof the defendant now relies upon the validity of the following: That the court erred in permitting the plaintiff to explain his failure to call Isadore I. Abelson as a witness. Also, in allowing the plaintiff's witness Munroe to testify from what book the items appearing on a bill sent to the defendant were taken without first requiring that the book be offered in evidence. Also, in permitting the plaintiff's attorney to read from the record of a former trial not in evidence during his closing argument to the jury. Furthermore, in charging the jury that the Podrat car was opened after it was put onto the defendant's tracks at Kingston. Likewise, in modifying the defendant's third request to charge and in granting the plaintiff's first, second and fourth requests to charge, and in denying the defendant's motion for a new trial.

(1)   In cross-examination of the plaintiff the counsel for defendant elicited the following testimony: "Q. What is this man's name that worked for you at Hope Valley? A. Isadore Abelson. Q. Did he run the store at Hope Valley that winter? A. Yes. Q. Had charge of it? A. Yes. Q. Where does he live now? A. Lives in Wakefield, runs a store in Wakefield. Q. Where does he live? A. He owns a store there. Q. Does he live in Wakefield? A. I expect he does. Q. Just answer the questions and nothing more. Is he in the court room now? A. No, sir, I haven't seen him, he may be here. Q. This case has been tried before? A. Several times. Q. He has been present at those trials, hasn't he? A. I guess he was once or twice. Q. Wasn't he more than once or twice? I don't know,

once or twice I guess he has been, that's all.   Q. One time he was—A. Away.   Q. And the rest of the time?   A. Yes, he was here the last time too, that's all.   Q. Now he helped you to pack these goods at Hope Valley?   A. Yes.   Q. He made out a list for you at Hope Valley?   A. Yes.   Q. And helped you to load them in the team and on the car at Hope Valley?   A. Yes. Q. And went with you to Wakefield that same day?   A. Yes. Q. You and he went on the same train that the freight went on? A. Yes, on the passenger car.   Q. And he went down to the Pier with you the next day?   A. Yes, sir.   Q. And he was with you at the station when you got the freight?   A. Yes. Q. He was with you in your store when you checked up the number of goods which you claimed were lost, was he?   A. Yes, I unpacked it and he checked it up.   Q. So he knows this case from beginning to end, doesn't he?   A. Yes." In redirect examination the plaintiff further testified:   "Q. Now you have been asked about Isadore Abelson; did you have him here at the last trial?   A. Yes.   Q. Did you put him on the stand?   A. Yes.   MR. JONES:   I object.   Jury taken out. MR. OLNEY:   This question has been asked if he has been summoned—   MR. JONES:   If he has, why that is all.   But this is not proper evidence—   MR. OLNEY:   The fact is that Abelson hasn't spoken to him for over a year, and that when he was here at the former trial he wouldn't answer a single question.   MR. JONES:   Wouldn't the court record be better evidence?   THE COURT:   I will permit you to inquire.   Mr. Jones' exception noted.   Jury admitted.   Q. Now, I will ask you, Mr. Podrat, if you have summoned Isadore Abelson for this trial?   A. No, sir.   Q. And why haven't you summoned him?   MR. JONES:   I want to object to that.   Mr. Jones' exception noted.   A. Because the last time the only thing he would answer was 'I don't remember.'   Q. And you didn't summons him at this trial because of that reason?   A. No, sir. Mr. Jones' exception noted."

We are unable to discover that the court erred in the circumstances.   The defendant had drawn the attention of the jury to the facts that Abelson, the former clerk of the plaintiff,

had been present at former trials of the case, and was absent from this; that he was the person who helped the plaintiff to pack the goods, and made out the list for him, and was the one who knew the case from beginning to end.   As was said by Holt, J., in *Robinson* v. *Woodford,* 37 W. Va. 377, 392:   "Apparently, in the case of this anomalous kind of evidence, it is competent for either side to put in evidence the fact that the other side has not called the witness, and in argument to allege that the reason for this is that he dared not do so."   The object of the defendant's inquiries was to lay the foundation for such an argument.   If it has been injured in the premises it is because the court has allowed the foundation for the argument to be weakened or destroyed, thereby depriving the defendant of the benefit of the argument before the jury.   But it appears from the testimony of the plaintiff himself that it is true that he did not dare to call the witness because the last time he did call upon him to testify all that he would say was that he did not remember.   There the incident closed.   No attempt was made to discover whether the loss of memory was real or feigned or what was the cause thereof, the fact alone was stated.   The exception is without merit.

(2)   Concerning the next exception it appeared that when the plaintiff and his clerk Abelson packed the goods in cases for shipment from Hope Valley to Narragansett Pier, Mr. Abelson made lists of the goods shipped, and that when the cases that were delivered to the plaintiff at Narragansett Pier were unpacked the contents of each case were verified by the lists thereof made by Mr. Abelson.   When it was ascertained that one case had not arrived the contents of that case were also determined by Mr. Abelson's list thereof.   At the request of the plaintiff, his bookkeeper Mrs. Martha A. Munroe, posted the contents of the missing case, contained in the slip already referred to, in a book and the slip was left in the possession of Mr. Abelson who afterwards reported to the plaintiff that he had lost the same.   It appeared that the plaintiff can sign his name but otherwise neither writes nor reads.   From the entries in the book so posted from the slip the plaintiff's bills were

made out that were sent to the defendant. The bookkeeper was asked the following question: "From what are the items that made that bill up taken? A. This book. Q. Now will you read the items of that bill? A. To 38 men's suits at $8., $304; 10 youth's suits at $6.75, $67.50; 11 boy's suits at $3., $33; 3 overcoats at $8., $24; 26 pairs of pants at $2.75, $71.50, making a total of $500. Q. What is the date of that? A. May 16, 1906." The ruling permitting these questions to be asked and answered is the one to which this exception relates. We see no impropriety in the ruling. It was a perfectly business-like transaction to transfer to a book the contents of the slip, making a permanent entry from the original memorandum. It is ordinary prudence that suggests the posting of such memoranda, and no harm was done to the defendant by the ruling in question.

(3)    The next exception was taken as follows: "During Mr. Olney's argument he reads from testimony taken at the former trial before Mr. Justice Mumford, to which Mr. Jones objects, objection overruled and Mr. Jones' exception noted," but it also appears from the transcript that after the testimony for the defendant had been given: "Mr. Olney reads from testimony taken at trial before Mr. Justice Mumford, as follows: Edward I. Coggeshall questions, 234, 235, 236. R. Franklin Locke, Page 226, questions 32, 33, 34, 35, 38, 39, 40, 41." It appeared in argument before us that the testimony read in argument was no other than that previously read in evidence without objection. Counsel for defendant seems to think it was taking an unfair advantage of his client to read evidence in argument but such a matter may safely be left to the discretion of the trial judge. Counsel in argument may, and often do, say to the jury that they do not wish to color or distort the meaning of a witness in giving certain testimony and for the purpose of treating him with the utmost candor and consideration they will give his exact language *verbatim et literatim*. The counsel may do this from his own notes or from the stenographer's notes, when obtainable, or by reading from a transcript of testimony or from depositions and there is no impropriety in

so doing as long as the same is sanctioned by the presiding judge, who would doubtless check any attempt to take an undue advantage of the situation.

The next exception charges the court with a misstatement of the evidence. The statements objected to are as follows: "Tucker testified he sealed the car on both sides, seal number 79 of the New York, New Haven and Hartford Railway Company, took the car and brought it here to Kingston, arriving here sometime in the vicinity of one o'clock, I believe, of the same day. That sometime about 1:50, according to the testimony, the car was run over on to the tracks of the Narragansett Pier Railway Company. The car passed over onto their tracks about 2:50, about an hour and fifty minutes after arriving here in Kingston. The car was opened here after it was put over on to the defendant's tracks, when the seals were broken and a roll of paper was put in to be shipped to some one named Thompson at Narragansett Pier, according to the testimony, and the agent of the defendant company sealed the car again." It is true that the court was slightly in error in stating that the seals were broken after the car had been placed upon the defendant's tracks. The seal was broken and the roll of paper was placed in the car at Kingston while the car was upon the tracks of the New York, New Haven and Hartford Railroad Company but at a time when the car was in the control of the defendant. The third condition printed upon the back of the bill of lading contains the following: "No carrier shall be liable for loss or damage not occurring on its own road, or its portion of the through route, nor after said property is ready for delivery to the next carrier or to consignee." At the time the seal was broken and the paper was placed in the car the property had not been delivered, but was ready for delivery to the defendant, and, under the condition aforesaid, liability of the New York, New Haven and Hartford Railroad Company was at an end and the possession of the defendant company commenced. That is, it has a right to, and did, exercise dominion over the car and its contents before it was transshipped on to the tracks

of the defendant.    The misstatement of fact is merely technical and no harm was done to the defendant thereby.

(4)    The defendant's third request to charge, which was modified by the court, reads as follows:    "3.    The plaintiff must prove delivery to the Narragansett Pier Railroad at Kingston Junction of the goods alleged to have been lost.    Proof of delivery to the Wood River Branch Railroad at Hope Valley is not sufficient."    The modification complained of is the following: "But proof of acceptance of the shipment unobjected to by the New York, New Haven and Hartford Railroad Company at Wood River Junction and the defendant company here at Kingston is sufficient evidence of delivery, so that there would be a presumption that the shipment remained intact, that the shipment remained as it was when it left Hope Valley."    In the circumstances of this case we see no objection to the modification.    It appears that the agent of the defendant was apprised of the contents of the car at Kingston and had the opportunity before he sealed the car of verifying the way bill or of demonstrating its falsity and of ascertaining the actual contents of the car by personal inspection.    The defendant after neglecting this opportunity cannot require that the plaintiff, who had no such opportunity, should furnish it with the information that was within its reach and which by the exercise of due diligence it might have obtained.    It is no valid objection to urge that the cases could not be conveniently counted in the car because it was by counting them in the car after its arrival at Narragansett Pier that the discovery was made, either that there was one case of goods missing or that there was a discrepancy between the goods mentioned in the bill of lading and the goods actually shipped.

(5)    The plaintiff's first and second requests to charge are as follows:

"FIRST:    You are instructed that if you believe from the testimony in the case that there was delivered to the first carrier, namely, the Wood River Branch Railroad Company, thirteen boxes of dry goods for shipment to Narragansett Pier, Rhode Island, as shown in the bill of lading and that among these

there was one that contained thirty-eight suits of men's clothes; ten youths' suits; eleven boys' suits; three overcoats and twenty-six pairs of pants, and receipt of this shipment consigned to this plaintiff was had by the subsequent connecting carriers, to wit, the New York, New Haven and Hartford Railroad Company, and the Narragansett Pier Railroad Company, without any objection on their part, then there is raised the presumption in this action that there was still the thirteen cases or boxes as when received by the first carrier, the Wood River Branch Railroad Company, and the burden is on the Narragansett Pier Railroad Company to prove that there was only twelve cases or boxes when it received the shipment, there being a presumption that the number continued until received by the last carrier, to wit, the Narragansett Pier Railroad Company."

"SECOND: And you are further instructed that if you believe from the testimony in the case that there was delivered to the first carrier, namely, the Wood River Branch Railroad Company, thirteen cases, as shown in the bill of lading, for delivery at Narragansett Pier and that one of these contained the goods claimed to have been lost, *viz.:* thirty-eight men's suits of clothes; ten youths' suits; eleven boys' suits; three overcoats; twenty-six pairs of pants, and the shipment was accepted by the connecting carriers without objection, and loss of these appears at the point of destination, then the burden of proof is upon the last carrier, to wit, the Narragansett Pier Railroad Company, to show that the loss did not occur while the goods were in its possession."

For the reasons already given we see no objection to the granting of these requests.

(6)   The defendant claims that the court erred in granting the plaintiff's fourth request to charge as follows:

"And you are further instructed that the only evidence of the value of the goods in this case is that adduced by the plaintiff and that this is for the sum of five hundred dollars, and that if you find that the defendant is liable for the loss, then this sum, that is the sum of five hundred dollars, is the amount which this plaintiff is entitled to have and recover of this defendant, the

Narragansett Pier Railroad Company." The court added: "The only testimony as to the value is that the goods were worth $500, therefore if the plaintiff is entitled to recover, he is entitled to recover the sum of $500."

Concerning this the defendant makes the following argument: "The only testimony introduced by the plaintiff as to the value was that of the plaintiff himself. The plaintiff was an interested witness. His testimony was not corroborated by invoices or written evidence of any kind. The fact that the plaintiff filed a claim for the loss of eighty-eight articles of clothing separated into five different classes and their aggregate value amounts to just $500 is sufficient to justify the jury in looking with suspicion on the unsupported testimony of an interested witness as to value."

If the jury did not believe the story of the plaintiff concerning the loss of his goods, they could have found for the defendant. As the jury found for the plaintiff they must have placed reliance upon his testimony.

There is nothing inherently incredible in the statement that men's suits of clothes should be worth eight dollars a suit; that youth's suits were each of the value of six dollars and seventy-five cents; that boy's suits were three dollars and thirty-three cents apiece; that overcoats were each worth eight dollars and that each pair of pants was worth two dollars and seventy-five cents. If the statement was untrue, it was false swearing upon a material issue and not lightly to be presumed. As there was no testimony tending to contradict it, the jury were rightly instructed to accept the same upon the question of value.

The defendant's last exception is founded upon the court's denial of its motion for a new trial. The defendant in support of this exception relies upon condition 3 on the back of the (7) bill of lading and hereinbefore set out, and claims that the Podrat car arrived at Narragansett Pier at 3:30 P. M. and was checked up and a record of the contents made within a few minutes, and that as soon as this record was made the goods were ready for delivery to the consignee, and that under the terms of

the contract, namely, the bill of lading, the liability of the carrier terminated; that it was not thereafter liable as carrier for loss of the goods.   That might be the case after due notice was given to the consignee that the goods were ready for delivery, but until such notice had been given or until a reasonable time had elapsed within which the consignee might come and receive his goods the liability of the carrier did not terminate.   In this connection the provisions of condition 5 are illuminating:   "5. Property not removed by the person or party entitled to receive it within twenty-four hours after its arrival at destination may be kept in the car, depot or place of delivery of the carrier, at the sole risk of the owner of said property, or may be, at the option of the carrier, removed or otherwise stored at the owner's risk and cost, and there held subject to lien for all freight and other charges.   The carrier may make a reasonable charge per day for the detention of any vessel or car, and for use of track after the car has been held forty-eight hours for loading or unloading, and may add such charge to all other charges hereunder, and hold said property subject to a lien therefor.   Property destined to or taken from a station at which there is no regularly appointed agent, shall be entirely at risk of owner when unloaded from cars, or until loaded into cars; and when received from or delivered on private or other sidings shall be at owner's risk, until the cars are attached to and after they are detached from trains."

When Mr. Podrat came for his goods the next day no claim was made that the liability of the carrier had terminated.   The case presented a disputed issue of fact and is therefore a case peculiarly within the province of a jury.   A jury has decided the cause and the justice who presided at the trial has refused to set the verdict aside on the ground that the verdict is against the evidence.   Under the rule referred to in the case of *Wilcox* v. *Rhode Island Company*, 29 R. I. 292, such ruling will be sustained in the absence of evidence that the judge erred in arriving at such a conclusion.   We find no such error.

The defendant's exceptions are overruled and the case is

remitted to the Superior Court with direction to enter judgment on the verdict.

*Frederick C. Olney,* for plaintiff.

*C. M. Van Slyck, Frederick A. Jones, Benjamin W. Case,* for defendant.