# CHARLESTON.

VANDERVORT v. FOUSE.

Submitted June 7, 1902.   Decided December 6, 1902.

1. BURDEN OF PROOF—*Presumption of Law.*

Where the burden is on a party to prove a fact material to him, not otherwise clear, his failure, without proper excuse, to produce an important and necessary witness to such fact, raises the conclusive presumption that such witness would not prove it, and the party can not have the benefit of that fact.   (p. 212).

2. REAL PROPERTY—*Creditors.*

If a father put valuable improvements upon land of his daughter, their value may be charged upon the land by his then existing creditor, whether he had, or has not, fraudulent intent as to them in making the improvements.   (p. 215).

3. CIRCUMSTANTIAL EVIDENCE—*Fraudulent Conveyance.*

Circumstantial evidence in cases of fraudulent conveyances. See opinion.   (p. 218).

Appeal from Circuit Court, Wood County.

Action by J. W. Vandervort against Norma E. Fouse. Decree for plaintiff, and defendant appeals.

*Affirmed.*

DAN. D. JOHNSON, for appellant.

J. W. VANDERVORT, *in pro. per.*

BRANNON, JUDGE:

J. W. Vandervort owned a judgment against Herman Fouse. While it was standing a lot of land in Parkersburg was conveyed by Wells to Norma E. Fouse, a daughter of Herman Fouse, for the consideration of one thousand three hundred and fifty dollars, of which three hundred dollars was paid down, and for one thousand and fifty dollars Norma Fouse gave her note. Upon this lot was erected a costly residence, the total money invested in lot and house by Norma Fouse of her means, as claimed by her, four thousand and eighty dollars. Vandervort brought a chancery suit in the circuit court

of Wood County, charging that the purchase of the lot, though in the name of Norma Fouse, was in fact nothing but a purchase by her father in the name of his child, for the purpose of making a home for himself and family which would be beyond the reach of his creditors, he being insolvent, and that money of the father, as well as his labor in erecting the house, had been put into the property, and that Vandervort was entitled to charge the property with his judgment. The case ended in a decree subjecting the property to Vandervort's debt, and Norma Fouse appeals.

There was a demurrer to the bill as being too general in its charge of fraud; but I think it sufficient. As this question presents no matter not well settled, it is needless to pursue it. Indeed, no opinion in the case seems necessary, as the case involves no new principles of law, but turns on a question of fact. If it were not good in this respect, it would be good to charge a voluntary gift.

Norma Fouse admits that when she bought the lot she had but four hundred and eighty dollars. She does not claim to have had more means, but that she borrowed it. She was a few months over twenty-one years of age when the lot was conveyed to her in April, 1899, and the house was built that year. We are led naturally to ask why she, so young and single, would want so costly a property, especially as she had only a few hundred dollars from the position of school teacher at thirty-five dollars per month. The inference is rather natural and likely, that as her father was insolvent, pursued by creditors, though actively and extensively engaged as a contractor in building houses, and having a family, he was the mainspring and architect of a plan to acquire the lot and put up a home upon it for himself, and shield it from creditors by depositing the title in his daughter. Circumstances point to this inference. He negotiated the purchase; made all arrangements touching it. He planned the building, superintended the erection of it, worked upon it himself, employed his laborers upon it, bought all of the material used in it, contracted with the mechanics and material men, paid them their demands therefor, and as soon as the house was ready for occupancy moved his family into it, and occupies it, paying no rent. The family was hardly able to live in so fine a house,

It is not without force to suggest that one is slow to think that a young daughter, in view of her own future, would mortgage herself for so large a debt, and get no rent, if in fact the property was hers. As below shown, she says she incurred large indebtedness, three thousand five hundred dollars. How could she expect to pay it without help? Did she expect her father to furnish means to do so? That is likely. No one but herself and father prove that she furnished the three hundred dollars down payment on the lot. Did she not spend some of her wages from teaching on herself? She says not. Is this likely? These circumstances go to support the finding of the circuit court that the property was acquired by the father in the name of the child for a home for himself in order thus to hide the real ownership from creditors. But let us go farther. No body disputes that the daughter did borrow money from the building association, and that this very money may have gone to pay unpaid purchase money for the lot, and in the building; but who was to pay this large debt of three thousand six hundred dollars? How could it be expected that the daughter could do so, deriving no rent from the house? But the father could readily apply his earnings there. And, in fact, we find him paying dues. The same interrogation may be made as to the second building association loan of three thousand five hundred dollars, which was used to pay the first one. Who but the father was expected to shoulder this? The daughter could not. What else is the natural inference? Courts are men, and must like other men in other affairs gather people's designs and aims from the circumstances and reasonable probabilities. But her own four hundred and eighty dollars and the money borrowed from the building association was not enough. The father and daughter say that the daughter borrowed one thousand dollars from Fred Fouse, her uncle. They say that she gave two notes for this. They have never appeared. There Fred Fouse was in full life in Parkersburg. Strange, very strange, that the defense did not call him to the stand to verify this statement, this very important element in the case. "A party having it in his power to prove a fact, if it exists, which, if proven, would benefit him, his failure to prove it must be taken as conclusive that it does not exist." *Wells-Stone Co.* v. *Truax,* 44 W. Va. 531. "Where the burden is on

a party to prove a material fact in issue, the failure, without excuse, to produce an important and necessary witness to such fact, raises the conclusive presumption that such witness' testimony, if introduced, would be adverse to the pretensions of such party." *Union Trust Co.* v. *McClellan,* 40 W. Va. 405. This is a very important and pivotal point in this case. Without that one thousand dollars that property could not have been built. It is in the property. Where did it come from? From the uncle or from the earnings of the father? Clear proof is here demanded. The uncle is not produced. No excuse is given why he is not. Two witnesses say that this uncle declared to them that he made no such loan. This is said not to be evidence; but it all the more called upon the defence to take his evidence.

As to this one thousand dollars Norma Fouse says that her uncle paid it in paper money. Strange that he would keep so much money open to burglars, and not keep it in bank and give checks when banks are so handy in a city like Parkersburg. And the uncle asked no security for this large sum of one almost a child and without means. Another strong circumstace against this loan is that from March, 1899, to November, 1900, covering the date of said loan, Levi Skidmore lent Fred Fouse six thousand dollars, Fouse giving as his reason for borrowing, "I need the money, I am hard up." How could he afford to lend one thousand dollars, if hard up? Norma Fouse says her uncle paid the one thousand dollars in notes of the denominations of one, five, ten, and twenty dollars. Unusal this is. She says this money was not put in bank, but kept at home. This is somewhat unusual. None of her money appears in bank. She says that out of the same notes she paid Smith & Co. three times one hundred dollars at a payment, and at another time two hundred dollars; but a member of that firm swears that at least two of the payments for lumber were paid in one hundred dollar bills, and another in fifty dollar and twenty dollar bills. Here is an inconsistency not without great importance as bearing on this pretended loan. Add to these circumstances the fact that the father negotiated the purchase of the lot, planned the house, superintended the work, worked himself a great deal on it, purchased lumber, contracted with material men, paid hands, paid dues to the building association,

and we have a strong probability that the purchase was really for him, and that his time, labor and service and money went into the property. I should add a fact not without weight. Herman Fouse had, at the time, several buildings on hand. He would transfer hands from those being erected under contract to this house, and back and forth, working on them indiscriminately, without keeping account of the work on the house in question, paying for the work on all three without discrimination. And he kept no account of the moneys received from his daughter. And there is evidence to show that he put casing of his own confessedly in the building.

Fraud cannot generally be proven by explicit evidence. In no class of cases does circumstantial evidence play a more active and appropriate part than in fraud cases, and necessarily so, else fraud would run riot in the land, and honest creditors would be at the mercy of chicanery and covin. The parties plan to hide. The law warrants the use of such evidence. It is not necessary that fraudulent intent be proven beyond doubt, so that a case of fair and reasonable probability be established, not readily explainable on other hypothesis. We cannot say positively what is going on in the mind, but we can put this fact, though alone slight, in connection with other facts, and judging from our knowledge of human nature, and the usual motives of men, say what was the purpose in view. *Reynolds v. Gawthrop*, 37 W. Va. 3; *Richardson* v. *Ralphsnider*, 40 *Id.* 15. And in this case we must reflect that this transaction, the building the house, paying out money, expending labor, is not between strangers, but between father and daughter, which makes the transaction more open to suspicion, places the burden on the defendant, and calls for fuller proof than a case between strangers. *Burt* v. *Timmons*, 29 W. Va. 441. It is painful to render such decisions, but justice demands it. The reports of this Court teem with cases of fraudulent conveyances. For years they have been, and are yet, abroad in the land. Long ago this Court took strong grounds against them, and rendered decisions repressive of them, and we cannot depart from their line with safety to business. We cannot overrule the circuit court upon a question of fact, unless convinced that its decision is plainly wrong.

Moreover, if we say that there was no fraud in fact, in in-

tent, it yet appears that Herman Fouse put time, labor and money enough into the building to pay the plaintiffs decree, six hundred and five dollars and three cents. In this view it would be a voluntary settlement on the daughter in improvements, for which a creditor can charge the property. *Humphreys* v. *Spencer,* 36 W. Va. 11. And for a stronger reason, if invested in improvements with bad intent. *Burt* v. *Timmons,* 29 W. Va. 442.

Decree affirmed.

*Affirmed.*

NOTE BY DENT, PRESIDENT:

I concur in the affirmation of the decree in this case, not because I think the fraud alleged has been established, but because the circuit court has so found, and I am unable to say that its finding is plainly wrong. The defendant's evidence is clear as to the sources from which she derived the means to purchase the lot and build the property, and had she corroborated her testimony as to the one thousand dollars alleged to have been borrowed of her uncle by his testimony, she would have rebutted all inference of legal fraud notwithstanding the assistance given her by her father in the erection of the property. The relationship and the suspicious circumstances surrounding the transaction cast upon her the burden of showing freedom from constructive fraud and while her evidence uncontradicted might ordinarily be sufficient for this purpose, yet when she neglected to place her uncle and alleged debtor on the witness stand, she opened the way for a dangerous legal inference and this is that his evidence would either contradict her statements or she was afraid to submit him to the cross-examination of opposing counsel. It is true plaintiff could have made him a witness. He was not bound to do so, and would thereby lose the right of cross-examination and the just legal inference arising from the failure of the defendant to use such witness. Persons charged with fraud should never take any risks, but should give the court the full benefit of all testimony at their command. I do not think that Norma Fouse intended to lend herself to a fraudulent scheme on the part of her father to cover up his means from his creditors, but through her uncle he may

have been able even to deceive her and thus indirectly to have furnished the money that went into the property without her knowledge. The fact that she was deceived and had no knowledge as to the fraud would not prevent the creditors from following the property as a voluntary gift, and subjecting it to their debts. The uncle having knowledge of the matter, if acting in good faith, should have insisted on being a witness and a party to the suit for his own protection. In cases of this character trifles seemingly as light as air sometimes change the scales of justice.

Whether the evidence of the defendant was sufficient to free the transaction from legal fraud on the part of the father of which the daughter was the knowing or innocent recipient is a question under the facts and circumstances about which reasonable men may differ, and, although some of the members of this Court may think the circuit court erred in its holding, yet because it is a question of doubt and uncertainty, the decree of the circuit court must prevail. *Bailey* v. *Calfee,* 49 W. Va. 630; *Weaver* v. *Aiken,* 48 W. Va. 456; *Spurgin* v. *Spurgin,* 47 W. Va. 35.

This rule so well established may be changed or modified by the addition of another member to this Court.