## Richmond

### MARJORIE G. JACOBS v. CHARLES G. JACOBS AND CHERYL V. SILL

September 1, 1977.

Record No. 760403.

Present: All the Justices.

Lee Kelberg (*Calvin H. Childress; Kelberg and Childress*, on brief), for appellant.

*Glenn B. McClanan* for appellees.

HARRISON, J., delivered the opinion of the Court.

On April 19, 1974, Marjorie G. Jacobs filed her bill of complaint seeking to have the court rescind a deed executed by her on February 21, 1974, by which she conveyed to her husband, Charles G. Jacobs, certain real property in Virginia Beach. She prayed that the deed be set aside upon the ground that it was executed under duress. At the same time appellant filed a memorandum of *lis pendens*. Subsequently, on September 13, 1974, appellant filed an amended bill adding Mrs. Cheryl V. Sill as a party defendant and prayed that a deed from Charles G. Jacobs to Cheryl V. Sill, dated June 21, 1974, conveying the subject property to Mrs. Sill, be also set aside. The lower court denied appellant the requested relief, observing that her testimony was not corroborated.

Mr. and Mrs. Jacobs lived together as husband and wife, from time to time, over a period of approximately thirty years. It was a turbulent marriage, punctuated by constant strife and numerous separations. Appellant and the two adopted daughters of the parties testified that the husband drank to excess, acted irrationally at times, was mean and vicious, brutally beat and abused Mrs. Jacobs and repeatedly threatened to kill her. Appellee was jailed on one occasion because of his conduct. During one of their numerous separations Jacobs agreed to give her the home if she "would take him back". At that time, December 18, 1970, Jacobs conveyed to appellant his interest in the subject property, which the parties then owned jointly.

Conditions between the parties did not improve after the 1970 reconciliation, and they were separated at the time Mrs. Jacobs executed the February 21, 1974 deed reconveying the property to

her husband. Her testimony regarding the circumstances surrounding this reconveyance was as follows:

"Q. For the month of January 1974, how was the situation?

"A. It was wonderful. He didn't know where I was.

"Q. Then, could he find you in February of 1974?

"A. Yes, sir, he really did.

"Q. What happened then?

"A. He broke in my trailer a few times. He would come down where I was working. He got me fired from my job, pushed me around and cussed me out, so they fired me.

\* \* \* \* \*

"Q. Did there come a time when he mentioned this real estate to you?

"A. Yes, sir, he bugged me for about a week and I said, 'Jack, I am not going to sign it.' That's all. One day, I had just gotten off work and I was laying down on the couch. He broke in and grabbed me and said, 'You are going to sign this today or I am going to kill you.' So, he drug [sic] me out, took me out and made me sign it.

"Q. Where did you sign it?

"A. Down at Green-Gifford. [Motor Corporation].

"Q. Did he pay you anything?

"A. No, sir.

"Q. Why did you sign the deed?

"A. I was afraid because he said he was going to kill me and I am afraid of that man. He is —

"Q. Did you feel that this might give you some peace and quiet if you signed it?

"A. Yes, sir. When I signed it, the Notary Public will tell you — if he would tell it — I said, 'Now, Jack, I have signed it. Please leave me alone.' But he still would not leave me alone. Everytime he comes in town he has got to call me and cuss me and threaten me.

\* \* \* \* \*

"Q. And Mrs. Jacobs, you-all went together into the Green-Gifford business?

"A. He forced me. He practically drug [sic] me in there."

F. C. Whitehurst, the notary public before whom Mrs. Jacobs acknowledged the deed, did not recall having heard any

statement made by Mrs. Jacobs. He said that the parties were in his office only about three minutes and about all he recalled was that Mrs. Jacobs appeared to be a little irritated with her husband.

■ While corroboration of testimony is not a prerequisite for rescission of a deed on the ground of duress, it is necessary that the testimony establishing duress be clear and convincing.

In 6B M.J., *Duress and Undue Influence*, §§ 2-3, pp. 14-15 (1976), defining "duress" it is said:

> "The term 'duress,' with respect to execution of a deed, is not limited to acts causing personal restraint, fear of personal injury, or imprisonment. The requirements of common-law 'duress' have been enlarged to include any wrongful acts that compel a person, such as a grantor of a deed, to manifest apparent assent to a transaction without volition, or cause such fear as to preclude him from exercising free will and judgment in entering into a transaction.

> \* \* \* \* \*

> "What constitutes duress depends upon the facts of each case, and the court must be controlled by a sound discretion in each to see that right and justice are done. The question is to be determined on consideration of the surrounding circumstances such as age, sex, capacity, situation, and relation of the parties. Thus, in a suit to set aside a deed on the ground of duress, the grantor's age, capacity, and all attendant circumstances must be considered. . . ." [footnotes omitted]

■ Undue influence which will invalidate a will is similar in many respects to duress. In *Hartman* v. *Strickler and Wife*, 82 Va. 225 (1886), we held it was unnecessary to prove acts of undue influence occurring at the time a will was executed. Earlier acts of undue influence, the effect of which continued until the time the will was executed, were sufficient to invalidate the will. And in *Furnish* v. *C.I.R.*, 262 F.2d 727, 733 (9th Cir. 1958), it was said:

> " 'Duress' may exist not only when a gun is held to one's head while a signature is being subscribed to a document. A long continued course of mental intimidation can be equally as effective, and perhaps more so, in constituting duress. The

actions of the husband in this particular case over a long period of time with all the other facts before the Court, lead us to the conclusion that here there could well have existed duress on the wife sufficient to destroy her free will. . . ." [footnotes omitted]

See also 25 Am. Jur. 2d Duress and Undue Influence, §§ 3, 13-14 (1966); 17 C.J.S. Contracts § 175 (1963).

■ Appellant's testimony established a long continued course of cruel and intimidating treatment of her by Jacobs. This testimony was fully corroborated by the two adopted daughters. Furthermore, Mrs. Jacobs said that she was forced or "dragged" from her apartment and that she signed the deed reconveying the property to her husband because of his threat to kill her. Notwithstanding a general appearance by counsel for both appellees, Mr. Jacobs and Mrs. Sill neither testified nor offered evidence in their behalf. In fact Mr. Jacobs did not appear at the trial.

We have held that "when a defendant can, by his own testimony, throw light upon matters at issue necessary to his defense and peculiarly within his own knowledge if the fact exists, and fails to go upon the witness stand, the presumption is raised and will be given effect to, that the facts do not exist". *Roanoke Ry. & Elec. Co.* v. *Whitner*, 173 Va. 253, 258, 3 S.E.2d 169, 171 (1939).

In Marshall, Fitzhugh and Helvin "The Law of Evidence in Virginia and West Virginia" (Nash. Ed.) § 220, p. 386-88 (1954), it is said:

"The cases are replete with statements to the effect that, where one party to a legal controversy has within his control evidence material to the issue and does not produce it, there is a strong presumption that such evidence, if produced, would operate to his prejudice. This so-called presumption arises from the failure to produce real or documentary evidence, the failure to call a material witness, or from a party's own failure to take the stand as a witness or, as a witness, to answer questions when he possesses material knowledge. It may arise, also, from the failure to procure evidence which, though not in hand, is readily available. There is no presumption where there is already sufficient evidence so that that omitted would be merely corroborative, nor where due diligence to obtain the

evidence is shown or there is some valid excuse for its nonproduction: nor does the rule operate against a defendant when the plaintiff has not made a prima facie case.

"Despite the language of presumption generally employed, this is no more than a permissive inference. It does not supplant the necessity for other, at least prima facie, proof sufficient to sustain a judgment or a decree." [footnotes omitted]

See also 29 Am. Jur. 2d Evidence § 188 (1967); 31A C.J.S. Evidence § 156(4) (1964).

In the instant case we have both the nonappearance of a litigant at a trial and his failure to testify. Attendant circumstances surrounding the conveyance of the property by Mrs. Jacobs to her husband and his subsequent transfer of it to Mrs. Sill were such as required some explanation by the appellees. None was offered. It is our conclusion that the uncontradicted testimony introduced by appellant, when considered with all the surrounding circumstances, clearly and convincingly established the allegation by Mrs. Jacobs that she executed the February 21, 1974 deed under duress.

Accordingly, the judgment of the lower court will be reversed and the cause remanded with direction that the deed from Marjorie G. Jacobs to Charles G. Jacobs, dated February 21, 1974, and recorded in the Clerk's Office of the Circuit Court of Virginia Beach in Deed Book 1404 at page 6, and the deed from Charles G. Jacobs to Cheryl V. Sill, dated June 21, 1974, and recorded in said clerk's office in Deed Book 1428 at page 504, be set aside and vacated, and that appropriate entries be made on the records of the lower court.

*Reversed and remanded.*