363 S.E.2d 736

**Priscilla McGLONE and Fred McGlone**

v.

**SUPERIOR TRUCKING COMPANY, INC., a Georgia Corporation, Joseph W. Cartwright and James Laviere.**

**No. 17151.**

Supreme Court of Appeals of
West Virginia.

Nov. 18, 1987.

Scott S. Segal and James F. Wallington, Charleston, for plaintiffs-appellants.

Richard D. Jones, Kay, Casto, & Chaney, Charleston, for defendants-appellees.

1. The record does not indicate the precise nature of the oversize load of cargo. The record does indicate that the cargo being hauled by the appellees' three-axle vehicle was some type of pear-shaped machinery or equipment, the dimensions of which were fourteen feet three inches in height and fourteen feet in width. It weighted 36,000 pounds.

McHUGH, Justice:

This appeal raises questions concerning (1) strict liability for personal injuries alleged to have been proximately caused by the transportation of an oversize load, (2) a "missing-witness" instruction and (3) alleged juror disqualification in a civil case. The particular strict liability question is one of first impression in this jurisdiction. The "missing-witness" question presents us with the opportunity to clarify a confusing area of the law. The juror disqualification question emphasizes again the need for timely action by trial counsel.

The appellants, Priscilla McGlone and Fred McGlone, her husband, plaintiffs below, brought this appeal of the final order of the Circuit Court of Kanawha County, West Virginia ("the trial court") denying the new trial motion of the appellants. The trial court had previously entered judgment upon the verdict of the jury in favor of the defendants/appellees, Superior Trucking Company, Inc., a Georgia corporation, Joseph W. Cartwright and James Laviere. For the instructional error discussed in section III of this opinion, we reverse and remand for a new trial.

I

On October 2, 1979, defendant/appellee, Joseph W. Cartwright, was operating a tractor-trailer combination carrying an oversize load of cargo in a westerly direction on Interstate 64 in Kanawha County, West Virginia.[1] The tractor was owned by defendant/appellee, James Laviere, and was under lease to defendant/appellee, Superior Trucking Company, Inc. Superior Trucking Company, Inc. owned the trailer. About 7/10 of a mile east of the Dunbar exit of Interstate 64, the appellees' tractor-trailer swerved into the left lane to avoid a

Pursuant to *W.Va.Code,* 17C–17–11 [1975], the appellees had obtained a special permit from the Commissioner of the West Virginia Department of Highways to haul the oversize load on certain highways in this State.

collision with a tanker truck entering the interstate highway at the MacCorkle Avenue interchange. In so doing, part of the load on the appellees' tractor-trailer struck a light pole which was erected on the concrete median of the highway. The light pole fell into the east-bound lane of the highway. While operating her vehicle in an easterly direction on the highway, plaintiff/appellant, Priscilla McGlone, was injured when her car struck the fallen light pole.

Priscilla McGlone brought an action in the Circuit Court of Kanawha County, West Virginia, for her physical and psychological injuries sustained allegedly as a result of the accident. Her husband, plaintiff/appellant Fred McGlone, joined in order to recover for loss of consortium. The appellants' psychiatric expert testified that Mrs. McGlone was suffering from post-traumatic stress disorder caused by the parts of the disintegrating light pole nearly colliding into Mrs. McGlone's windshield. He testified that Mrs. McGlone's injuries were permanent to a reasonable degree of medical certainty. He also testified that his fees, past and future, and the cost of Mrs. McGlone's hospitalization totaled $6,661.70. An economist testified that Mrs. McGlone's lost homemaker services, past and future, amounted to $114,922.

The appellee's psychiatric expert testified that after a review of the medical records and an examination of Mrs. McGlone, it was his opinion that she was suffering psychiatric impairment. However, he attributed Mrs. McGlone's current condition to a preexisting condition—she had been seeing chiropractors since 1971 for neck problems—and disagreed that the 1979 accident caused her condition.

After resting their case the appellants moved to amend their complaint to reflect that they were no longer seeking damages for any physical injuries not alluded to by Mrs. McGlone's psychiatrist and were no longer seeking damages for medical expenses other than those incurred to obtain treatment by Mrs. McGlone's psychiatrist. That is, the appellants had abandoned all claims for damages for physical injuries except those which were sequela of the psychiatric injuries. The trial court granted the motion to amend the complaint.

Over the objection of the appellants the trial court refused to instruct the jury that the appellees were liable under a theory of strict liability.[2] A statute provides that the appellees are strictly liable for the property damage done to the West Virginia Department of Highways' property.[3]

Over the objection of the appellants the trial court instructed the jury that the failure of the appellants to call those doctors, most of whom were chiropractors, who had

2. Plaintiffs' instruction no. 1, refused by the trial court, stated:

The jury is instructed that as to liability your verdict shall be in favor of the Plaintiffs, Priscilla and Fred McGlone, and against the Defendant, Superior Trucking Company, Inc., and that your only inquiry is to be as to those damages which you find have been proven by a preponderance of the evidence to have been proximately caused as the result of the incidents of October 2, 1979.

3. W. Va. Code, 17C-17-13 [1951] provides:

(a) The owner, lessee or borrower of any vehicle, object, or contrivance driven or moved upon any highway or highway structure shall be liable for all damage which said highway or structure may sustain as a result of any illegal operation, driving, or moving of such vehicle, object, or contrivance, or as a result of operating, driving, or moving any vehicle, object, or contrivance weighing in excess of the maximum weight in this chapter but authorized by a special permit issued as provided in this article.

(b) Such damage may be recovered in [a] civil action brought by the authorities in control of such highway or highway structure.

Similarly, W. Va. Code, 17C-17-11(a) [1975], authorizing the hauling of an oversize or overweight load across the highways in this State upon obtaining a special permit therefor, provides that the special permit may be issued only upon the condition that the applicant for the permit "shall agree to compensate the commissioner of highways for all damages or expenses incurred in connection with such crossing; ..." The Commissioner of the West Virginia Department of Highways "may require such undertaking, bond or other security as may be deemed necessary to compensate for any injury to any roadway structure...." W. Va. Code, 17C-17-11(c) [1975].

The appellees paid for the damage to the property of the West Virginia Department of Highways.

examined and treated Mrs. McGlone for about two years before she started seeing her psychiatrist gave rise to a presumption that had those doctors testified, their testimony would have been adverse to Mrs. McGlone with respect to the extent of her physical injuries.[4]

During closing argument, trial counsel for the appellees indicated that he had a "speaking acquaintance" with one of the jurors.[5] After the trial the appellants moved for a new trial on the ground that the juror had falsely answered *voir dire* questions concerning familiarity with any of trial counsel. The trial court's rulings on instructions mentioned in the immediately preceding two paragraphs were also assigned as grounds for a new trial. The jury had returned a verdict in favor of the defendants/appellees. The trial court denied the motion for a new trial.

On appeal the plaintiffs/appellants have assigned as errors the same three grounds assigned as grounds for a new trial.

## II

The appellants contend that it was reversible error for the trial court to refuse to give their instruction on strict liability, so that the case went to the jury solely on a negligence theory of recovery. We disagree.

This Court is aware that other courts have held that statutes, such as *W.Va. Code*, 17C–17–1 to 17C–17–14, as amended, *see supra* note 3, regulating the use of highways to transport oversize or overweight loads are intended not only to prevent damage to roads and bridges in the State but also to promote the safety of

motorists and their passengers traveling over such roads and bridges. *London v. Stepp*, 56 Tenn.App. 161, 181, 405 S.W.2d 598, 604 (1965), *cert. denied* (Tenn. Feb. 7, 1966); *see also Woodington v. Pennsylvania R.R.*, 236 F.2d 760, 764 (2d Cir.1956), *cert. denied*, 352 U.S. 970, 77 S.Ct. 362, 1 L.Ed.2d 324 (1957); *Byers v. Standard Concrete Products Co.*, 268 N.C. 518, 521, 151 S.E.2d 38, 40 (1966); *Tiller v. Commonwealth*, 193 Va. 418, 420–21, 69 S.E.2d 441, 443 (1952). Stated another way, these cases hold that individual members of the public, not merely the government of the State, are beneficiaries of the protection afforded by statutes on the transportation of oversize or overweight loads. These cases were, however, negligence actions or criminal proceedings. None of them involved strict liability.

The case of *Cairl v. City of St. Paul*, 268 N.W.2d 908 (Minn.1978), relied upon by the appellees, is instructive. In *Cairl* an automobile owner brought an action against a city to recover for damages to his automobile arising out of a high-speed police chase. The court held that application of the doctrine of strict liability to the plaintiff's action was reversible error because statutes expressly imposed a negligence standard of care on police officers when operating their vehicles in emergency situations. Applying the rule of statutory construction that the expression of one thing is the exclusion of another (*expressio unius est exclusio alterius*), the court in *Cairl* reasoned that by expressly authorizing a negligence action, the legislature had impliedly excluded strict liability. *Id.* at 912–13. Similarly, by expressly providing

---

4. Defendants' instruction no. 1, given by the trial court, stated:

    The Court instructs the jury that the failure of the plaintiff to call those doctors that saw and treated her immediately following the accident gives rise to a presumption that had those doctors testified, their testimony would have been adverse to Priscilla McGlone.

5. In context, trial counsel for the appellees stated during closing argument:

    Let me tell you something. You all are fine, decent citizens. I don't know any of you. I have had an acquaintance with one of you years and years ago, simply [a] speaking ac-

quaintance. I know who he is and he knows who I am; other than that I don't know anything; but it seems to me that when these litigants come in here, as Mrs. McGlone and her husband are asking you, on blind faith, to believe them and give them thousands and thousands of dollars, it seems to me that they have some duty to help you people understand their case. Wouldn't it have been some help if they had brought in the people that came into the home and had to do the work because this lady was so badly hurt? Wouldn't that have helped?

for strict liability to the State for property damage, the legislature in the present case has impliedly excluded strict liability to individuals for personal injuries.

While we do not believe the fact that the State has authorized the appellees to engage in the activity in question necessarily precludes strict liability for personal injuries proximately caused by that activity, *see McLane v. Northwest Natural Gas Co.,* 255 Or. 324, 336, 467 P.2d 635, 641 (1970), the legislature is the proper forum to impose strict liability because it has already impliedly spoken on the matter. *Cairl,* 268 N.W.2d at 913.

■ Accordingly, this Court will not infer legislative intent that there be strict liability for personal injuries proximately caused by transporting, with or without a special permit, an oversize or overweight load on the highways, where *W. Va. Code,* 17C–17–13, as amended, provides that there is strict liability to the State for property damage, but is silent as to liability for personal injuries.

Moreover, the appellants have not cited, nor has our research disclosed, any cases in which it was held that the transportation of oversize or overweight loads on the highways constitutes an abnormally dangerous activity triggering strict liability, as set forth in *Peneschi v. National Steel Corp.,* 170 W.Va. 511, 295 S.E.2d 1 (1982). The appellants' reliance upon *Griffith v. George Transfer & Rigging, Inc.,* 157 W.Va. 316, 201 S.E.2d 281 (1973), is misplaced. While the Court did state in that case that the carriage of freight upon public highways in high-powered tractor-trailers demonstrates a situation which involves an "unreasonable risk of harm to others," *id.* 157 W.Va. at 323, 201 S.E.2d at 286, the holding in that case was that such a risk of harm gives rise to an exception to the general rule exonerating a person from the *negligence* of an independent contractor. As stated in syllabus point 2 of *Griffith,* "[o]ne who carries on an activity which requires a franchise from a public authority and involves an unreasonable risk of harm to others, is subject to liability for physical harm caused to others by the *neg-*

*ligence* of a contractor employed to perform the franchise activity." (emphasis added) (comma before "is" in the original) It is apparent that the Court did not impose strict liability.

■ "An instruction which does not correctly state the law is erroneous and should be refused." Syl. pt. 2, *State v. Collins,* 154 W.Va. 771, 180 S.E.2d 54 (1971). *Accord,* syl. pt. 5, *McAllister v. Weirton Hospital Co.,* 173 W.Va. 75, 312 S.E.2d 738 (1983); syl. pt. 3, *West Virginia Department of Highways v. Buckley,* 164 W.Va. 77, 260 S.E.2d 826 (1979). Under this principle the plaintiffs'/appellants' instruction no. 1, on strict liability, *see supra* note 2, should have been refused. The refusal of the trial court to give this instruction is not reversible error.

### III

The appellants also contend that it was reversible error for the trial court to give the defendants'/appellees' instruction no. 1, a so-called "missing-witness" instruction, *see supra* note 4. We agree.

*Quoting* M. Marshall, J. Fitzhugh and J. Helvin, *The Law of Evidence in Virginia and West Virginia* § 220 (C. Nash ed. 1954), the court in *Jacobs v. Jacobs,* 218 Va. 264, 237 S.E.2d 124 (1977), gave this excellent summary of the so-called "missing-witness" or nonproduction-of-evidence concept:

'The cases are replete with statements to the effect that, where one party to a legal controversy has within his control evidence material to the issue and does not produce it, there is a strong presumption that such evidence, if produced, would operate to his prejudice. This so-called presumption arises from the failure to produce real or documentary evidence, the failure to call a material witness, or from a party's own failure to take the stand as a witness or, as a witness, to answer questions when he possesses material knowledge. It may arise, also, from the failure to procure evidence which, though not in hand, is readily available. There is no presump-

tion where there is already sufficient evidence so that that omitted would be merely corroborative, nor where due diligence to obtain the evidence is shown or there is some valid excuse for its nonproduction[;] nor does the rule operate against a defendant when the plaintiff has not made a prima facie case.

'*Despite the language of presumption generally employed, this is no more than a permissive inference.* It does not supplant the necessity for other, at least prima facie, proof sufficient to sustain a judgment or a decree.' [footnotes omitted]

*Id.* at 268–69, 237 S.E.2d at 127 (emphasis added). *See generally* F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 12.4(C)(j), at 685–86 (2d ed. 1986) (citing, without comment, early West Virginia cases, discussed *infra*, calling this so-called presumption "conclusive").[6]

Many of the leading commentators have criticized the reach of this concept and suggest caution in applying it. "This undoubted general principle has been frequently applied in numerous rulings, most of which throw no special light upon its doubtful features and are of little service as precedents." 2 J. Wigmore, *Evidence in Trials at Common Law* § 285, at 199 (J. Chadbourn rev. 1979). "Despite the plenitude of cases supporting the inference, caution in allowing it is suggested with increasing frequency.... Possible conjecture or am-

biguity of inference is often present.... [T]he availability of modern discovery procedures serves to diminish both the justification and the need for the inference." *McCormick's Handbook of the Law of Evidence* § 272, at 657 (E. Cleary gen. ed. 1972) (footnoted citations omitted).

The courts, too, are mindful of the dangers inherent in the use of an instruction on the nonproduction of particular evidence at trial, for example, the danger that such an instruction permitting an adverse inference may add a fictitious weight to the case of the proponent of the instruction. *Cooper v. United States*, 415 A.2d 528, 533 (D.C.1980). It has also been held in at least one jurisdiction that a missing-witness instruction adverse to the defendant has no place in a criminal case, where such instruction states that the failure to call an available material witness "raises a presumption" which, to avoid the adverse finding, *must* be rebutted by *evidence*. *Russell v. Commonwealth*, 216 Va. 833, 223 S.E.2d 877 (1976). The court in *Russell* believed that such an instruction was contrary to the constitutionally derived principle on the presumption of innocence and its attendant principle that a defendant in a criminal case need not, generally, produce evidence. *Id.* at 837, 223 S.E.2d at 879.

The propriety of a missing-witness instruction raising a presumption against a defendant in a criminal case is fraught with constitutional implications not present in a

---

**6.** Another formulation of the concept involving the nonproduction of particular evidence at trial is contained in *Neeley v. Johnson*, 215 Va. 565, 211 S.E.2d 100 (1975):

[T]he unexplained failure of a party to call an available material witness gives rise to an inference, sometimes called a presumption, that the testimony of such absent witness would be adverse to such party....

The essential elements of the rule, which must be supported by the evidence to justify an instruction thereon, are availability and materiality of the witness.

*Id.* at 573, 211 S.E.2d at 107. In *Neeley*, a personal injury case, it was held that the missing-witness instruction offered by the defendant should not have been given because the testimony of the absent doctors would clearly have been cumulative, not material, and because there was no evidence that all of the absent doctors were available to the plaintiffs.

*See also* syl. pt. 4, *Montgomery v. Chesapeake & Potomac Telephone Co.*, 121 W.Va. 163, 3 S.E.2d 58 (1939): "The evidence of an absent material witness is not presumed to be adverse to the side not procuring his [or her] attendance when the same material facts relating to the severity of the plaintiff's injury known to the absent witness have been testified to by other competent witnesses." The Court thus held that the trial court's refusal to give the defendants' missing-witness instructions was proper because the missing witnesses' testimony would have been merely corroborative. The missing witnesses were not, therefore, "material." The refused instructions stated that the plaintiff's failure to call the two doctors "created the presumption" that their testimony would have been adverse to the plaintiff.

civil case. *Cf.* syl. pt. 4, *State v. Pendry,* 159 W.Va. 738, 227 S.E.2d 210 (1976) (error to give instruction requiring criminal defendant to rebut presumption as to a material element of the crime), *overruled, in part, on other grounds, Jones v. Warden, West Virginia Penitentiary,* 161 W.Va. 168, 173, 241 S.E.2d 914, 916–17, *cert. denied,* 439 U.S. 830, 99 S.Ct. 107, 58 L.Ed.2d 125 (1978).

For our purposes here, other language from *Russell* is more pertinent. After reviewing precedents involving the nonproduction of particular evidence at trial, the *Russell* court made some important distinctions with which this Court agrees. It is one thing for an appellate court to employ the missing-witness inference as a judicial guideline in determining the sufficiency of the evidence to support the verdict;[7] or to say that the matter may be the legitimate subject of comment by counsel;[8] or to indicate that a circumstance *may* be considered by the trier of the facts;[9] it is quite another thing, however, for a trial court to *instruct* a jury that a binding-unless-rebutted, adverse *presumption* of law arises from the failure of a party to call a particular witness. *Russell,* 216 Va. at 836, 223 S.E.2d at 879.

While the inference which may result from the failure to call an available material witness or to produce other particular evidence has often been denominated a "presumption," it is generally held that such failure raises no presumption of law at all, but merely authorizes the jury to draw an unfavorable inference of fact. *Jacobs v. Jacobs,* 218 Va. 264, 269, 237 S.E.2d 124, 127 (1977) (quoted previously); 31A C.J.S. *Evidence* § 156(3), at 417 (1964 and Supp.1987) (collecting cases); *McCormick's Handbook of the Law of Evidence* § 272, at 658–59 (E. Cleary gen. ed. 1972); 1 *Jones on Evidence* § 3:91, at 324 (S. Gard 6th ed. 1972). Where a party fails to call an available material witness, a proper instruction would state that the jury may draw the inference that the witness, if he or she had been called, could not have testified in support of the party's case, if the jury finds such inference to be warranted by the situation presented. *Wade v. City of Mount Vernon,* 133 A.D. 389, 390, 117 N.Y.S. 356, 357 (1909). A binding instruction, requiring the jury to draw such inference, unless rebutted by evidence satisfactorily explaining the nonproduction of the witness, is improper. *See, e.g., Green v. Brooks,* 215 Pa. 492, 495, 64 A. 672, 673–74 (1906).[10]

---

**7.** *See, e.g., Vaughan v. Memorial Hospital,* 100 W.Va. 290, 296, 130 S.E. 481, 483 (1925) (not involving an instruction). The appellees cited this case to the trial court.

**8.** *See, e.g.,* syl. pt. 8, *Robinson v. Woodford,* 37 W.Va. 377, 16 S.E. 602 (1892):

It is not improper for the trial-court to permit counsel in argument before the jury to comment on the fact that the other party has not called and examined a material witness summoned on his behalf and present, and to ask such question as may be proper to lay the foundation for such comment. But such matters are largely within the discretion of the trial-court.

(hyphen between "trial" and "court" in the original) In the body of the opinion the Court noted that "[n]o instruction was asked upon the subject, and none given." *Robinson,* 37 W.Va. at 392, 16 S.E. at 607. The Court recognized that "it is competent for either side to put in evidence the fact that the other side has not called the [available material] witness, and in argument to allege that the reason for this is that he dared not do so." *Id.* We believe these points are still valid.

**9.** *See, e.g., Workman v. Clear Fork Lumber Co.,* 111 W.Va. 496, 500, 163 S.E. 14, 15 (1932) (approving an instruction using the words, "creates the presumption") ("presumption" used here in its nontechnical sense of "presumption" of fact, or permissible "inference").

**10.** The distinction between a "presumption" and an "inference," while technical, is important in this context in order to prevent the jury from being misled as to the effect of nonproduction of particular evidence at trial. A cogent explanation of the distinction between a "presumption" and an "inference" is set forth in F. Cleckley, *Handbook on Evidence for West Virginia Lawyers* § 12.4(B)7., at 682 (2d ed. 1986):

A presumption is a deduction which the law requires a trier of fact to make: it is mandatory. An inference is a deduction which, based upon circumstantial evidence, the trier may or may not make, according to his own conscience: it is permissive. The term presumption correctly refers to a presumption of law; the term inference correctly refers to a presumption of fact. Permissible inferences, while closely associated with the concept of presumption, have a different concept than

■ It is clear, therefore, that the unfavorable inference which may arise from the withholding of particular evidence at trial is not conclusive against a party, but is merely a matter for the consideration of the jury. 1 *Jones on Evidence* § 3:93, at 329 (S. Gard 6th ed. 1972); 31A C.J.S. *Evidence* § 156(1), at 398, § 156(3), at 418 (1964 and Supp.1987) (collecting cases). Because this inference is not conclusive, an instruction directing the jury's attention to the failure of a party to call a particular witness or to produce other particular evidence at trial must be carefully drafted so as not to be binding upon the jury. 88 C.J.S. *Trial* § 355, at 934–35 (1955 and Supp.1987) (collecting cases).

In fact, the risk of misleading the jury as to the effect of the nonproduction of particular evidence at trial is so significant that there is a split of authorities on the propriety of giving an instruction on the point. Some jurisdictions, such as West Virginia, hold that there is a right to have the inference which may arise from the failure to call a particular witness explained in an instruction. Some jurisdictions hold that the giving of a properly drafted instruction on such inference is discretionary with the court, but is not required. At least one jurisdiction (Missouri) condemns the giving of an instruction on such inference because it would, in that court's opinion, constitute an impermissible comment by the court upon the evidence. *McCormick's Handbook of the Law of Evidence* § 272, at 659 (E. Cleary gen. ed. 1972) (citing cases); 88 C.J.S. *Trial* § 271, at 730, § 312, at 830 (1955 and Supp.1987) (collecting cases).

In this jurisdiction there are three cases decided near the turn of this century which hold that the failure to call an available material witness raises the *conclusive* presumption that the testimony of the "missing" witness would have been adverse to the party failing to call such witness. First, there is *Vandervort v. Fouse*, 52 W.Va. 214, 43 S.E. 112 (1902). That case did not involve an instruction on the missing witness. Instead, the Court applied the missing-witness concept in concluding that the evidence was sufficient to support the trial court's finding of fraud. Syllabus point 1 of the opinion states:

> Where the burden is on a party to prove a fact material to him, not otherwise clear, his failure, without proper excuse, to produce an important and necessary witness to such fact, raises the conclusive presumption that such witness would not prove it, and the party can not have the benefit of that fact.

The eminent Professor Wigmore bluntly criticized this case for "using the entirely improper phrase that a 'conclusive presumption' is raised[.]" 2 J. Wigmore, *Evidence in Trials at Common Law* § 285, at 198 n. 2 (J. Chadbourn rev. 1979).

The same criticism is applicable to syllabus point 3 of *Union Trust Co. v. McClellan*, 40 W.Va. 405, 21 S.E. 1025 (1895), which, in approving a missing-witness instruction, states:

> Where the burden is on a party to a suit to prove a material fact in issue, the failure, without excuse, to produce an important and necessary witness to such fact, raises the conclusive presumption that such witness' testimony, if intro-

---

presumptions and have a different application. Presumptions vary from inferences in that if the basic fact giving rise to the presumed fact is established, there is a compulsory finding of the presumed fact in the absence of rebuttal. A permissible inference which rests upon a logical deduction from established facts provides a conclusion which the triers of fact may or may not find along with the other evidence in a case.

*Cf. W.Va.R.Evid.* 301 ("[A] presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, ..."). *See generally* Alexander, *Presumptions: Their Use and Abuse,*

17 Miss. L.J. 1 (1945) (lucid analysis by an associate justice of the Supreme Court of Mississippi distinguishing a presumption as a form of judicial notice, from an inference, such as the inference that testimony of a "missing" witness would have been adverse to the party failing to call the witness, as a less definite logical deduction which the jury may consider).

By meticulously distinguishing a "presumption" from an "inference" we are aware that, for practical purposes of the effect on the jury, the key point is that jury is informed that it may draw the adverse inference, but is not required to do so.

duced, would be adverse to the pretensions of such party.

Finally, syllabus point 5 of *Garber v. Blatchley*, 51 W.Va. 147, 41 S.E. 222 (1902), approving a missing-witness instruction and citing syllabus point 3 of *Union Trust Co. v. McClellan*, is equally erroneous in its use of "conclusive presumption" language.

■ Accordingly, this Court holds that the unjustified failure of a party in a civil case to call an available material witness may, if the trier of the facts so finds, give rise to an inference that the testimony of the "missing" witness would, if he or she had been called, have been adverse to the party failing to call such witness. To the extent that syllabus point 1 of *Vandervort v. Fouse*, 52 W.Va. 214, 43 S.E. 112 (1902), syllabus point 5 of *Garber v. Blatchley*, 51 W.Va. 147, 41 S.E. 222 (1902), and syllabus point 3 of *Union Trust Co. v. McClellan*, 40 W.Va. 405, 21 S.E. 1025 (1895), are inconsistent with this opinion, they are hereby overruled.

■ Turning to the missing-witness instruction in the present case, *see supra* note 4, we believe that the jury may have been misled by the phrase therein, "gives rise to a presumption," especially in light of the fact that trial counsel for the appellees during closing argument told the jurors that they were bound by the court's missing-witness instruction, whether they liked it or not. "An instruction which is susceptible of two constructions, one of which is erroneous, and which may, therefore, mislead the jury, should not be given." Syl., *Hammond v. Thacker Coal & Coke Co.*, 105 W.Va. 423, 143 S.E. 91 (1928). Under this principle the trial court's giving of the defendants'/appellees' instruction no. 1 is reversible error.

## IV

■ The appellants' third assignment of error involves the disclosure, during closing argument by the appellees' trial counsel, that such counsel had a "speaking acquaintance" with one of the jurors. The appellants contend that the case of *West*

*Virginia Human Rights Commission v. Tenpin Lounge, Inc.*, 158 W.Va. 349, 211 S.E.2d 349 (1975), supports their motion for a new trial on the basis that a juror falsely answered a material question on *voir dire*, thereby impairing the right to a fair trial. Syllabus point 2 of that case holds that "[u]pon an allegation before a trial court that a juror falsely answered a *material* question on *voir dire*, and where a request is made for a hearing to determine the truth or falsity of such allegation[,] it is reversible error for the trial court to refuse such hearing." (emphasis in the original)

The appellants' reliance upon *Tenpin Lounge* is misplaced. Syllabus point 2 thereof is hinged upon a request for a hearing on the matter. There was no request here. This point is also emphasized in the body of the opinion: the complaining party must have been "diligent in his [or her] efforts to ascertain the disqualification. . . ." *Id.* 158 W.Va. at 357, 211 S.E.2d at 354. *See also State v. Banjoman*, 178 W.Va. 311, 317 & n. 9, 359 S.E.2d 331, 338 & n. 9 (1987) (error of allegedly false *voir dire* answers not preserved where no request for a hearing on same was made).

■ In the early case of *Flesher v. Hale*, 22 W.Va. 44 (1883), the Court held, *inter alia*, that where a new trial is requested on account of alleged disqualification or misconduct of a juror, it must appear that the party requesting the new trial called the attention of the court to the disqualification or misconduct as soon as it was first discovered or as soon thereafter as the course of the proceedings would permit; and if the party fails to do so, he or she will be held to have waived all objections to such juror disqualification or misconduct, unless it is a matter which could not have been remedied by calling attention to it at the time it was first discovered. *Id.*, syl. pt. 3 and at 49. *See also Royal v. Commonwealth*, 2 Va.App. 59, 68–70, 341 S.E.2d 660, 665–66 (1986) (trial court properly refused to set aside jury verdict or to allow posttrial questioning of juror who, on *voir dire*, allegedly concealed his acquaintance with defendant, where defendant protested such juror's competency to serve as

juror only after jury returned guilty verdict, even though defendant had recognized juror on second day of trial).[11]

Unlike in *Tenpin Lounge*, the *disclosure* of the false or allegedly false answers on *voir dire* occurred here *before* the case went to the jury, yet the appellants did not immediately ask the court to inquire of the juror as to the extent of the relationship with counsel for the appellees and the effect, if any, of any relationship upon that juror's—and the other jurors'—ability to decide the case solely upon the evidence. The error, if any, was waived in this case.

■ Moreover, a new trial will be granted only when the prospective juror's willful or inadvertent failure, during *voir dire*, to disclose relevant information suggests actual or probable bias or prejudice, not merely because the complaining party has been, in effect, denied a peremptory strike of a particular prospective juror. *Faith v. Neely*, 41 F.R.D. 361, 367 (N.D.W.Va.1966). Here, the belatedly disclosed relationship was only a "speaking acquaintance" and was voluntarily disclosed by trial counsel for the appellees. The potential for bias or prejudice appears on this record to be obviously remote. In any event, as discussed previously, any error here was waived by failure to protest timely.

For the reasons set forth in sections II and IV of this opinion, we affirm the portions of the trial court's final order denying a new trial on the strict liability and juror disqualification grounds. On the other hand, for the reason set forth in section III of this opinion, we reverse the portion of the trial court's final order denying a new trial on the missing-witness ground, and we remand for a new trial.

Affirmed, in part; reversed, in part, and remanded.

---

11. *Cf.* syl. pt. 1, *State v. Finley*, 177 W.Va. 554, 355 S.E.2d 47 (1987) (during *voir dire* defendant protested timely when prospective jurors were exposed to potentially prejudicial information; trial court should have conducted or permitted individual *voir dire* to determine whether prospective jurors remained free of bias or prejudice).