563 S.E.2d 797

STATE of West Virginia, Plaintiff
Below, Appellee

v.

Shawna Dawn JAMES, Defendant
Below, Appellant.

No. 29990.

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 6, 2002.

Decided April 5, 2002.

Darrell V. McGraw, Jr., Attorney·General, Kimberly Stitzinger Jones, Assistant Attorney General, Charleston, for the Appellee.

Paul R. Stone, Jack L. Hickok, WV Public Defender Services, Charleston, for the Appellant.

PER CURIAM:

Shawna James (hereinafter "Appellant") appeals from an order of the Circuit Court of Kanawha County entered September 25, 2000, which denied her motion seeking a new trial in connection with her conviction for malicious assault in 1998. Appellant asserts that the trial court erred in giving an instruction which Appellant asserts is a version of the so-called "missing witness" instruction. After a careful review of the record, the parties' briefs and arguments, and the applicable law, we affirm for the reasons that follow.

I.   Factual and Procedural Background

Sometime after midnight on June 13, 1996, Appellant and Nena Ferguson arrived separately at a very crowded bar in Charleston, West Virginia. Ms. Ferguson was accompanied by her friend, Paula Triggs.[1] Appellant was with her cousin, Lily Mae James, and Elizabeth Kincaid. According to Ms. Ferguson, Ms. Kincaid approached Ms. Ferguson and told her that Appellant had "maced" Ms. Ferguson's car.[2] Ms. Ferguson verbally confronted Appellant with this information.[3] A fight ensued between the two during which Ms. Ferguson suffered multiple lacerations, at least some of which resulted in disfiguring scars. The State contended these scars caused the victim to suffer serious depression for which treatment was required.

Appellant was indicted for the altercation by a grand jury on February 18, 1997. At trial before a Kanawha County jury, Mark Bolin, a bouncer at the bar who witnessed at least a part of the fight, stated that Ms. Ferguson was trying to block Appellant's punches and Appellant was doing the majority of the fighting. He further stated that Appellant stabbed Ms. Ferguson repeatedly with a broken bottle. There was conflicting testimony regarding whether Appellant's cousin held Ms. Ferguson's arms behind her back while Appellant cut Ms. Ferguson. Appellant's cousin was also indicted as a co-defendant but not tried with Appellant or called as a witness in her trial.[4] Appellant did testify in her trial. She claimed that she fought Ms. Ferguson in self defense and denied that she hit or cut Ms. Ferguson with a bottle.

In his opening statement, counsel for Appellant called attention to the likelihood that the State would only call a few of the persons present at the fight, although perhaps 175 people were in the bar and at least 20 or more in the immediate area where the fight occurred. The State responded by requesting that the charge to the jury include the instruction which is at issue here. The State offered to withdraw the requested instruction if defense counsel would agree not to raise the question of missing witnesses in his clos-

---

1.  Although her name was mentioned in testimony, Ms. Triggs did not testify at trial.

2.  At trial, Ms. Kincaid denied telling this to Ms. Ferguson, and she did not testify regarding the incidents that followed.

3.  Testimony of Ms. James and Ms. Ferguson indicated that they both had been romantically involved with the same man. Ms. Ferguson denied that this man was the reason why she confronted Appellant on June 13, 1996.

4.  After Appellant's trial, the charge against Appellant's cousin was dismissed.

ing argument. Counsel declined to give that assurance, and the trial court included the requested instruction in its charge to the jury. The instruction at issue reads as follows: "The State and the defendant both have the authority to subpoena witnesses to trial. If there is a witness the defendant believes would be helpful to her case, she may subpoena that witness if the State does not." Defense counsel did address the failure of the State to call additional witnesses in his closing argument, and the State responded in rebuttal that the defense had the right to subpoena any witness it wished, as the trial court had instructed the jury.

The jury found Appellant guilty of malicious assault on June 16,1998, and she was incarcerated forthwith by reason of the violent nature of the offense. Appellant filed a timely motion for new trial, asserting that the instruction given constituted reversible error and that the evidence was insufficient to support the jury's verdict.[5]

On October 16, 1998, the trial court heard argument on the motion for new trial and considered matters relating to the appropriate sentence. By order entered October 19, 1998, the court deferred its ruling on the motion for a new trial, continued the case to December 18, 1998, and placed Appellant on supervised release. By order entered November 30, 1998, the court ordered the arrest of Appellant after the State filed a petition alleging violation of the conditions attached to Appellant's supervised release. Ultimately, the circuit court suspended the imposition of sentence and released Appellant on three years probation, effective on the date of the order, February 1, 1999.

Subsequently, Appellant was charged with and admitted violating the terms of her probation, and the trial court, by order entered June 23, 1999, committed Appellant to the Department of Corrections for a sixty-day diagnostic evaluation at Pruntytown. After receiving the report of that evaluation, the

circuit court, by order entered December 2, 1999, revoked Appellant's probation and sentenced her to the penitentiary for a term of two-to-ten years, with 418 days of credit for time served in jail awaiting trial and conviction.

The trial court failed to address the merits of Appellant's pending motion for a new trial in any of its post-conviction orders. By letter dated September 1, 2000, Appellant's counsel wrote to the trial judge and requested a hearing on the motion for new trial, specifically regarding the jury instruction at issue here. Counsel asserted that there had been no ruling on the instruction issue, although it had been discussed on the record several times. In response, the circuit court held a hearing on the motion for a new trial September 13, 2000, and denied it by order entered September 25, 2000. Appellant now appeals that order.[6]

## II. Standard of Review

In syllabus point four of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), we addressed this Court's review of jury instructions as a whole, as well as the extent and character of any specific instruction:

A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific

---

**5.** Insufficiency of the evidence was not argued by Appellant on appeal.

**6.** While the State argues that the appeal to this Court is untimely, we find this argument to be without merit. The trial court deferred its ruling on Appellant's new trial motion, and the time for

appeal of the September 25, 2000, order denying that motion was extended by the trial court until March 25, 2001. The appeal petition was filed in the office of the Clerk of the Circuit Court of Kanawha County on March 23, 2001, within the time allowed by the trial court.

instruction will be reviewed only for an abuse of discretion.

*Id.* at 663–64, 461 S.E.2d at 169–70. With these principles in mind, we proceed to review the case before us.

### III.   Discussion

Appellant argues in her brief that the instruction given by the lower court is a version of the "missing witness" instruction. The State responds that the instruction given is not a "missing witness" instruction because it does not contain a proscribed presumption or even advise the jury that it might be permitted to draw a particular inference from the failure to call or summon a witness.

This Court addressed the use of missing witness instructions in the context of civil cases in *McGlone v. Superior Trucking Co., Inc.,* 178 W.Va. 659, 363 S.E.2d 736 (1987). In *McGlone,* we departed from versions of the instruction previously approved.[7] *McGlone* made clear that no *presumption* arises from the failure to call a witness, that the instruction, if used, could not *direct* the jury to draw an adverse inference from the failure to call a witness, and that the use of such an instruction in criminal cases did in fact raise serious constitutional problems. We cautiously approved a non-binding instruction in *McGlone* for use in appropriate civil cases based upon this principle of law:

> The unjustified failure of a party in a civil case to call an available material witness may, if the trier of the facts so finds, give rise to an inference that the testimony of the "missing" witness would, if he or she had been called, have been adverse to the party failing to call such witness.

*Id.* at 661, 363 S.E.2d at 738, syl. pt. 3, in part.

■■■ We agree with the State's assertion that the instruction given does not contain all of the elements of the missing witness in-

struction approved in *McGlone.* In fact, the instruction given neither directs, nor expressly permits, the jury to draw an inference that the testimony of a so-called missing witness would have been adverse to the party who failed to call that potential witness. Appellant maintains, however, that the absence of the presumption or inference portion of the instruction does not cure the ill effects of the instruction. Specifically, Appellant argues that the failure of the instruction to inform the jury what use they might make of the fact that the defense could have summoned witnesses merely compounds the error inherent in the instruction by permitting the jury to draw unknown and perhaps unwarranted conclusions. Appellant argues that the potential for the jury to draw unwarranted conclusions under the instruction was particularly egregious in the instant case. Recalling that her cousin was an indicted codefendant likely to assert her privilege against self-incrimination if summoned to testify in this case, Appellant expressed concern that the jury would draw an unwarranted conclusion adverse to Appellant from the failure to summon the cousin, rather than recognize that the cousin's right to exercise her self-incrimination privilege was a matter completely beyond Appellant's control.

Appellant also argues that the instruction is, in essence, a comment by the judge on the evidence; that it undermines the presumption of innocence which remains with a criminal defendant until the jury's verdict is returned;[8] and that the instruction suggests to the jury that a criminal defendant has an obligation to offer testimonial evidence. With respect to these arguments, we note that the use of missing witness instructions in criminal cases has been expressly disapproved by other states. In *Russell v. Commonwealth,* 216 Va. 833, 223 S.E.2d 877

---

7. The instruction given in *McGlone,* which this Court specifically rejected, read as follows: "The Court instructs the jury that the failure of the plaintiff to call those doctors that saw and treated her immediately following the accident gives rise to a presumption that had those doctors testified, their testimony would have been adverse to Priscilla McGlone." *Id.* at 663, n. 4, 363 S.E.2d at 740, n. 4.

8. "In the trial of a criminal offense, the presumption of innocence existing in favor of a defendant continues through every stage of the trial until a finding of guilty by the jury." Syl. Pt. 11, *State vs. Pietranton,* 140 W.Va. 444, 84 S.E.2d 774 (1954).

(1976), Virginia's highest court reasoned as follows:

[U]se of the [missing witness] instruction against the defense would run head on into the presumption of innocence to which every accused is entitled and upon which juries are universally instructed. The burden is upon the prosecution to prove its case against the accused. The defense need not prove anything; it may rely upon the presumption of innocence. To tell a jury that the failure of the defense to call a material witness raises an adverse presumption against the accused is to weaken, if not neutralize, the presumption of innocence which, if given its full strength, might be sufficient to tip the scales in favor of acquittal.

*Id.* at 837, 223 S.E.2d at 879. *See also, State v. Malave,* 250 Conn. 722, 737 A.2d 442 (1999); *State v. Tahair,* 772 A.2d 1079 (Vt. 2001).

If the instruction in this case had been a "pure" missing witness instruction, permitting the jury to draw an adverse inference from the failure to call a witness, we likely would have found the *Russell, Malave* and *Tahair* cases highly persuasive. However, since the instruction before us lacks the full breadth of the usual missing witness instruction, we must now examine the "precise extent and character" of the instruction under consideration to determine if, in the context of the entire jury charge, the instruction given constitutes prejudicial error under the abuse of discretion standard set forth in *Guthrie.* 194 W.Va. at 664, 461 S.E.2d at 170, syl. pt. 4.

The first sentence of the subject instruction, "[t]he State and the defendant both have the authority to subpoena witnesses to trial," is factually and legally correct and is a balanced statement of the rights of the State and the defense, although it is abstract and does potentially draw attention to whether or not a criminal defendant will call or has called witnesses and offered testimony. While it may be said to be neither erroneous nor prejudicial as a part of general, introductory instructions given at the beginning of a trial or the beginning of a charge, the quoted language nevertheless raises the constitution-

al concerns we noted in *McGlone* and our sister states noted in *Russell, Malave* and *Tahair.* Further, it appears to serve no useful purpose in the overall scheme of a criminal trial.

The second sentence of the instruction presents a more difficult problem. That sentence reads as follows: "If there is a witness the defendant believes would be helpful to her case, she may subpoena that witness if the State does not." While that sentence is also factually and legally correct, we find the language employed wholly inappropriate under the circumstances.

First, there is a difference between being able to issue a subpoena and actually procuring the attendance of a witness at trial. As argued by Appellant, factors beyond a defendant's control may render certain witnesses unavailable or probably unavailable, as in the case of her co-defendant. Indeed, a proper missing witness instruction in a civil case requires a showing that the alleged missing witness was also "available" to be called. Moreover, the instruction given singles out the conduct of the defendant, the Appellant here. It may be fairly said to amount to a comment by the trial court on Appellant's evidence or the lack of evidence offered by her. Appellant persuasively argues that the effect of the presiding judge giving such an instruction likely has a far more substantial impact on the jury than would a similar comment offered in argument by the prosecuting attorney. We also agree with Appellant that the instruction invites the jury to speculate as to why a witness was not called and to speculate on the possible effect of that witness's testimony on the case. Moreover, the instruction tends to suggest that Appellant had some obligation to produce witnesses to prove or tend to prove her innocence. We conclude that the instruction, taken as a whole, was inappropriate.

The next question is whether the instruction, in light of the entire charge to the jury, constitutes prejudicial error in the circumstances of this case. As we have said in *Guthrie,*

Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and

were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

194 W.Va. at 663–64, 461 S.E.2d at 169–70, syl. pt. 4, in part.

 Having carefully reviewed the charge in its entirety, this Court believes that the jury was fully and fairly instructed on the law applicable to the case. Included in the charge was a full explanation of a criminal defendant's rights, including the presumption of innocence and the burden of the State to prove each and every element of guilt beyond a reasonable doubt.[9] Even the instruction complained of included a reference to the power of the State, along with the right of the defendant, to have compulsory process for the production of witnesses. Moreover, Appellant's counsel retained and exercised full freedom to argue to the jury the effect of the State having failed to call additional witnesses who might have confirmed or challenged the State's version of the events at issue in the trial. We cannot conclude that the trial court abused its discretion by including the two-sentence instruction complained of within the body of an otherwise unexceptional and non-prejudicial charge.

While we strongly suggest that the instruction at issue here not be given in the future, we also give respectful deference to the trial court's discretion in formulating the whole charge. Accordingly, finding no prejudicial error, we affirm the judgment of conviction entered by the Circuit Court of Kanawha County.

Affirmed.

---

9. The court's full burden of proof instruction appeared later in the charge, substantially after the instruction objected to, and may be read to have cured any error in the earlier instruction under discussion in this opinion.